R. Milby et al. v. D. H. Regan.

Delivered May 12, 1897.

1. **Deed—Description of Land—Sufficiency.**

A description of land in a deed as being part of a specified league, beginning at a designated corner, "thence N. 45 E. —— vrs.; thence N. 45 W. —— vrs.; thence E. 45 S. —— vrs., to the place of beginning," containing a specified number of acres, is insufficient to convey any land.

2. **Execution Sale—Equitable Right—Notice—Effect.**

An execution creditor who is notified by the execution debtor that the land levied upon has been purchased from him for value by a specified person, and a deed made to her, but that by mistake the land conveyed was not described therein, can not, by purchasing at such sale, defeat the equitable right of the grantee in such deed to have the same reformed so as to properly describe the land.

3. **Deed—Insufficient Description—Correction by Second Deed.**

A defect in a deed in failing to properly describe the land conveyed may be corrected by the grantor's giving a second deed properly describing such land.

Appeal from Jackson. Tried below before Hon. T. S. Reese.

*J. M. Moore* and *John O. Rowlett*, for appellants.—Where land has been sold by one to another, for a valuable consideration, and a deed or memorandum of writing attempting to convey the same has been made, acknowledged, and properly recorded, but is defective for want of proper description, one who has additional and full notice aliunde the record of what particular land was intended to be conveyed, acquired no title thereto by a purchase under execution in his own behalf, especially when the amount bid is merely credited upon the execution or judgment. Ayers v. Duprey, 22 Texas, 604; Orme v. Roberts, 33 Texas, 523; Blankenship v. Douglass, 26 Texas, 226; Fisk v. Wilson, 15 Texas, 433.

*A. B. & W. M. Peticolas*, for appellee.—Notice that Milby had attempted to convey certain land owned by him, not describing it, to his sister, by deed void for want of description, is not notice of any right, legal or equitable, in Matttie Milby, such as would affect the rights of a judgment creditor. It is merely notice of a void deed. Stiles v. Japhet, 84 Texas, 97; Daugherty v. Yates, 35 S. W. Rep., 940.

NEILL, Associate Justice.—The appellee, D. H. Regan, brought this suit in the District Court against the appellants R. Milby and Dick

Callis, and their codefendant Mattie White, to recover and for partition of the land described in our conclusions of fact.

The answer of R. Milby consisted of a general demurrer, a disclaimer, and a denial of the necessity for a partition. Mattie White also disclaimed any interest in the premises sued for. Dick Callis answered by a general demurrer, a plea of not guilty, a special plea of estoppel, and suggested improvements in good faith.

The case was tried by the court, without a jury, and resulted in a judgment in favor of Regan for the land sued for and for a partition thereof. Callis recovered judgment for $250, for improvements made in good faith. From this judgment Milby and Callis have appealed.

The evidence shows that appellee, D. H. Regan, in May, 1878, recovered a judgment against appellant Robert Milby for $960.35, with interest at 8 per cent per annum, besides $11 costs of suit; that a pluries execution issued on the judgment and was levied on 318 acres of land, less 200 acres, Milby's homestead, which is a part of the John Andrews league and is the premises in controversy, and that the land so levied upon was sold by the sheriff by virtue of the execution and purchased by Regan at 75 cents per acre, aggregating $87, which sum was credited upon the judgment.

The sheriff, by virtue of the sale, conveyed the undivided 116 acres, the premises in controversy, to Regan on November 19, 1878; and it is admitted by appellants that the land is, by virtue of said execution sale, the property of appellee, unless his title is defeated by the following evidence, to wit: On September 1, 1877, Robert Milby and his wife, for a valuable consideration by their deed of that date, conveyed to Mattie Milby, Robert's sister, a certain parcel of land described in the deed as follows: "It being a part of the Andrews league; beginning at the S. W. corner; thence N. 45 E. —— v.; thence N. 45 W. —— v.; thence S. 45 W. —— v.; thence E. 45 S. —— v. to the place of beginning. The parcel of land to contain 116 acres." This instrument was duly acknowledged on the day of its execution, was filed for record on the 14th and recorded on the 18th day of September, 1877, in record of deeds of Jackson County, Texas.

After this instrument was executed, Mattie Milby married A. S. White, and on the 3d day of January, 1893, Robert Milby and his wife executed a deed of that date to Mattie White, which was acknowledged and filed for record on the same day. This deed conveyed the following described land: "In Jackson County, State of Texas, a part of the league originally granted to John Andrews, and particularly known as the Robert Andrews place, on west bank of Navidad River, being the same place conveyed by John Andrews, administrator of Robert Andrews, deceased, to D. R. Coleman, and conveyed to the grantor herein by W. B. Gayle, executor of D. R. Coleman, deceased. Beginning at a stake from which a peach 7 inches in diameter bears N. 70 W. 6 1-2 varas, and a hackberry bears S. 45 W. 10 1-2 varas (this is also the upper corner on the river of

the Culpepper tract); thence S. 45 W. 4610 varas, along the upper line of the Culpepper tract, to his corner on the back line of the Andrews league; thence N. 45 W. 396 1-2 varas, to a stake from which a postoak 12 inches in diameter bears east 8 varas; thence N. 452, 3695 varas to a corner of yard fence near front gate of Mrs. Andrews; thence S. 45 E. 50 varas; thence N. 45 E. 60 varas; thence N. 45 W. 50 varas (this offset cuts off the house and yard of Mrs. Robert Andrews); thence N. 45 E. 745 varas to corner on river bank, a peach 8 inches in diameter marked X, from which a hackberry 12 inches in diameter bears S. 10 E. 4 varas; thence down the river to place of beginning, containing 316 acres, less, however, 200 acres, the homestead tract of the grantor herein."

The consideration for the deed is stated therein as follows: "Whereas, on the 1st day of September, A. D. 1877, I, Robert Milby, of the county of Jackson, in the State of Texas, being indebted to my sister Mattie Milby (now Mattie White), of the county of Jackson, State aforesaid, in the sum of one hundred and ninety-seven dollars, with interest for two years prior to said sale, and for which said sum the said Mattie Milby held my certain promissory note, and to settle said indebtedness I, joined by my wife, A. J. Milby, conveyed to said Mattie Milby the following property hereinafter described; and whereas, the description of said land in said conveyance is not as explicit as it might be, now, therefore, know all men by these presents, that I, Robert Milby aforesaid, for the consideration mentioned in the deed aforesaid, which deed is of record in book H, page 545, of deed records of Jackson County, and for the further consideration of the sum of five dollars cash to me paid, the receipt whereof is hereby acknowledged, have granted, sold, etc., the land above described."

J. D. Owen, a lawyer, testified that he brought the suit of D. H. Regan again Robert Milby, and obtained the judgment under which the land in controversy was sold; that before the levy on the land was made Robert Milby informed him that he had sold and conveyed, or attempted to convey, to his sister, Mattie Milby, all the 316 acres tract, a part of the John Andrews league, owned by him, except 200 acres, his homestead; that he was indebted to his sister for borrowed money, and sold her the land to settle the debt; that Milby was angry when witness told him he was going to levy on the land, because his deed to Mattie Milby did not sufficiently describe the land to pass the title; that at the time he was informed by Milby that he had sold the 116 acres of land to his sister, he (Owen) was acting as the attorney for D. H. Regan, and attempting to collect the judgment against Milby; that to the best of his recollection, before the levy was made, he informed Regan what Milby had said about the sale to his sister, and at the same time informed Regan that he thought the deed to Mattie Milby from Robert Milby did not sufficiently describe the land to pass title.

Robert Milby testified that he sold his sister all of the 316 acres of the John Andrews league owned by him, except his homestead, and that the deed made by him to Mattie Milby was intended to convey the same, and if it did not describe the land, it was a mistake of the draftsman. He

also testified that, before the levy was made by the sheriff on the 316 acres, less the homestead, part of the John Andrews league, he informed J. D. Owen, the attorney for D. H. Regan, that he had sold said land to his sister, Mattie Milby, for a debt he owed her, for money used in his business, and that he had deeded or attempted to deed it to her; that he owned no land in the southwest corner of the John Andrews league, and that said 316 acre tract was all the land he owned in the John Andrews league when said deed was made to Mattie Milby.

The deed last above described was introduced in evidence after the testimony of the witnesses Owen and Milby.

On January 11, 1893, A. S. White and his wife, Mattie, for a valuable consideration, by their deed of that date conveyed the premises in controversy to the appellant Dick Callis. In this deed the land is described as in the deed from Milby and wife to Mattie White.

It is evident that the description in the deed of September 1, 1877, from Robert Milby and wife, is insufficient to convey any of the premises in controversy. It is equally manifest from the deed, when taken in connection with the evidence adduced upon the trial, that it was the intention of the grantors in making said deed to convey to the grantee the very land involved in this suit, and that the same land was then bought and paid for by Mattie Milby, the consideration paid being the extinguishment of a debt her brother owed her. The failure to properly describe the premises resulted from a mistake mutual to both grantors and grantee, for it was that of the draftsman who was acting for both parties in drawing a deed. That this defect in the description would, in an action between the parties to reform the instrument, in a court of equity, be corrected, there can be no doubt; for the rule is general that, when an agreement has been made, or a transaction has been entered into or determined upon as intended by all parties interested, but in reducing such agreement or transaction to writing, through a mistake common to both parties, the written instrument fails to express the real agreement or transaction, equity will reform the instrument so as to make it express the real transaction or agreement. 2 Pom. Eq., sec. 870; 3 Id., sec. 1376. And the principle is well settled, that in suits to reform written instruments on the ground of mutual mistake, parol evidence is always admissible to establish the mistake, and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement which the parties actually made. 2 Pom. Eq., sec. 859.

The equitable right that Mattie Milby had against her grantors to have the deed reformed so as to embrace the land purchased and intended to be conveyed, would exist and could be enforced as well against one claiming the premises by purchase from her grantor, who, at the time of such purchase, was informed or had notice of such equitable right; for one who purchases with notice of an equity which can be enforced against his grantor holds the property subject to such equity, and can not prevent its being enforced against himself. Ayers v. Duprey, 22 Texas, 604; Blankenship v. Douglas, 26 Texas, 226. If, then, as the evidence in this case

clearly indicates, the land in controversy was purchased by Mattie Milby for a valuable consideration, and a deed made by which it was intended that it should be conveyed to her, but through mistake of the draftsman the land intended to be conveyed was not described, and when the land was levied on at the instance of Regan's attorney, Regan, or his attorney directing such levy, was informed of or had notice of the fact that it was the intention of Robert Milby by his deed of September 1, 1877, in which he was joined by his wife, to convey the land in question to his sister, Mattie Milby, and that through such mistake the land was not described, Regan could not by his purchase of the land at such execution sale defeat the equitable right of Miss Milby to have the deed reformed so as to properly describe the land. And as the defect in the land was, prior to the institution of this suit, perfected by the execution of the second deed, such correction was as effective between the parties as though the deed had been reformed by a decree in equity. Story's Eq., secs. 164, 165, 167; Young v. Cason, 48 Mo., 259.

We do not feel authorized in rendering judgment here for appellants, for the reason that it is not apparent that the trial court considered and passed upon the questions which we deem conclusive of the case; and it may be that, if the court had deemed the questions we have passed upon the controlling issues in the case, evidence would have been introduced by the appellee which would have led to conclusions different from those deducible from the testimony before us.

For the reasons indicated, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*