BUTTERLY v. DEERING.

(Supreme Court, Appellate Division, Second Department. October 18, 1912.)

1. PLEADING (§ 245*)—AMENDMENT—CONFORMITY TO PROOF.

In an action on an employment contract for the services of plaintiff, a layman, to be rendered to defendant, a lawyer, the amended complaint alleged that plaintiff agreed to give his services to defendant, and "to solicit retainers or employments by clients," in consideration of which he was to receive as a commission a sum equal to one-sixth of the gross fees received by defendant in all cases where retainers were procured through his instrumentality or agency, to be paid to him as defendant received the same in the various matters, "settlement to be made every 1st day of January," and that his stated salary for clerical work should be increased to $2,000 from January 1, 1897. *Held,* that it was not error for the referee to permit the amendment by inserting in the complaint the allegations quoted, after the evidence had been introduced.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 635, 653–675; Dec. Dig. § 245.*]

2. MASTER AND SERVANT (§ 80*)—CONTRACT OF EMPLOYMENT—ACTION—FINDINGS.

Where, in an action for solicitor's services to be rendered to an attorney, the amended complaint charged that plaintiff agreed to give his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

services to defendant, which included clerical work and the solicitation of retainers or employment by clients, plaintiff having testified that he was to be paid on the basis of business "procured" by him, it was impossible to determine whether any fees allowed by the referee were on account of cases with which plaintiff merely had something to do with procuring them, as distinguished from cases "procured," the judgment was unsustainable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 107–127; Dec. Dig. § 80.*]

3. MASTER AND SERVANT (§ 6*)—CONTRACT OF EMPLOYMENT—EVIDENCE.
Evidence *held* to sustain a finding that defendant had employed plaintiff to perform clerical services at a specified salary, and also to solicit retainers for defendant, for which plaintiff was to receive from defendant a commission of one-sixth of the gross fees obtained by defendant from the retainers procured by plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 6; Dec. Dig. § 6.*]

4. EVIDENCE (§ 213*)—WRITINGS—OFFER OF COMPROMISE.
Where defendant wrote out a proposed contract for plaintiff's services, stating the history of defendant's relation with plaintiff in a business affair whereon he based the proposed agreement, such instrument, offered to show the recitals of facts as admissions by defendant of such facts, was not objectionable in an action for services on the ground that it was made as an offer of compromise; the only part of a compromise which is inadmissible being the suggested promise or offer of settlement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745–751, 753; Dec. Dig. § 213.*]

5. MASTER AND SERVANT (§ 3*)—CONTRACT OF EMPLOYMENT—CONSIDERATION.
In an action for services, it is not necessary, to establish a contract of employment, that plaintiff should prove a consideration other than the services rendered.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 2, 3; Dec. Dig. § 3.*]

6. MASTER AND SERVANT (§ 73*)—CONTRACT OF EMPLOYMENT—BREACH.
Where defendant either discharged plaintiff or consented to his leaving his employment, defendant could not defend an action for services on the theory that plaintiff left before the end of the term.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90–102; Dec. Dig. § 73.*]

7. MASTER AND SERVANT (§ 73*)—CONTRACT OF EMPLOYMENT—MISCONDUCT OF SERVANT.
That a servant, on leaving his employment, gathered up the papers in his desk, among which were papers belonging to his employer, did not deprive him of the right to recover for services rendered, in the absence of any proof of intentional wrongdoing.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 90–102; Dec. Dig. § 73.*]

•Appeal from Trial Term, Kings County.

Action by James N. Butterly against James A. Deering. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before BURR, THOMAS, CARR, WOODWARD, and RICH, JJ.

William N. Dykman, of Brooklyn (Irving Paine, of Rochester, on the brief), for appellant. ·· .

Frank Moss, of New York City, for respondent.

THOMAS, J. The defendant, a lawyer, principally devoted to condemnation and assessment proceedings, in 1892 employed as a law clerk the plaintiff, a layman, at a salary of $20 per week, and the latter left his service in February, 1899, of his own volition as he states, or on defendant's discharge as the defendant states. The cause of the separation was a disagreement as to the right of the plaintiff to share some fees when collected by defendant, and that matter is the subject of the present appeal.

The plaintiff's position, as indicated by the amended complaint, is that on January 9, 1897, the defendant agreed to pay him $40 per week salary and one-sixth of the gross fees collected in cases procured by him or through his instrumentality, and that he was accordingly entitled to recover therefor in the cases enumerated. ·With his brief, plaintiff submitted to the referee a motion (granted with the report) to amend the complaint so that it should state that the defendant agreed with plaintiff:

"(1) That he (Butterly) should give his services to the said defendant in said lines of work" *and to solicit retainers or employments by clients.*

"(2) That he should receive from said Deering as a commission a sum equal to one-sixth of the various gross amounts that should be received by the said defendant from property owners in all cases where retainers had been procured, or should be procured, through his instrumentality or agency, to be paid to him as the said defendant should receive the same in the various matters," *settlements to be made every 1st day of January.*

"(3) That his stated salary for clerical work, which had been one thousand (1,000) dollars, should be increased to two thousand (2,000) dollars from January 1, 1897."

The amendments are shown by the italics. One question is whether the amendments quoted could be granted by the referee; and another, whether the report sustains the complaint.

[1] The amendment was properly allowed. The amendment is not that plaintiff should be paid to "solicit retainers or employments by clients," but that such was a duty of his service, whereof another duty was clerical, and that for the one branch of his occupation he should be paid according to the retainers procured through his instrumentality or agency, and for the other a salary of $2,000 per year. The finding is that the defendant did not agree to advance the salary to $2,000, but that he did agree to pay one-sixth of the gross fees for cases procured after January 9, 1897, when a settlement in full was found to bar earlier claims. To be precise, the referee found that the agreement was:

"That the plaintiff should continue procuring retainers as he had been doing theretofore, and should continue performing services in connection with the procuring of retainers in proceedings, * * * and that for such services he (the defendant) agreed to pay the plaintiff, in addition to his weekly salary of $20, a sum equal to one-sixth of the gross fees collected by the defendant from retainers in such cases and proceedings, and it was also

agreed that settlements should be made between the plaintiff and defendant as to such fees annually in January of each year."

[2] The finding, appellant urges, does not accord with the complaint. It is vital that the contract should be ascertained; otherwise, further essential findings based on it fail to state facts essential to recovery. If finding 7 means that the plaintiff "should continue performing services in connection with the procuring of retainers," and should procure them, it is agreeable to the amended complaint. That it has such meaning is inferable, as respondent urges, from the ninth finding, that the plaintiff—

"from January 9, 1897, to February 21, 1899, pursuant to such agreement of January 9, 1897, continued in the employment of the defendant, and performed his part of the said agreement, and obtained and was instrumental in procuring retainers."

But when the cases for which recovery is allowed are enumerated in finding 28, it is not clear what services plaintiff rendered in connection with them. There is, perhaps, some significance in findings 25 and 26, as a generalization of plaintiff's work. They show that in the matter of retainers he procured, or he was instrumental, or he had something to do with obtaining them, and rendered services in connection with them. Finding 25 states cases in which defendant was retained and received fees, and finding 26 shows that in one of several ways plaintiff was related to the matters. But the recovery is not essentially based on findings 25 and 26, and does not include all the retainers enumerated in finding 25, but rather on finding 28, which states the retainers—

"in which the plaintiff is entitled to share under the agreement of January 9, 1897, and procured by the plaintiff, or which he was instrumental in procuring, or with which he had something to do in procuring, after January 9, 1897, and in connection with which he rendered services as agreed upon January 9, 1898."

As far as this finding states that he procured the enumerated cases, or was instrumental in procuring them, it is clearly sufficient; but there is an alternative that he had something to do with procuring them, and after this disjunctive finding is the conjunctive statement that plaintiff rendered services in connection with them as agreed upon January 9, 1897. Assume, now, that some of the cases he procured, that some he was instrumental in procuring, that he had something to do with procuring some, and that in each instance he rendered services as agreed upon January 9, 1897. That raises the inquiry: What was that agreement? This throws the inquiry back to the amended complaint and finding 7.

It is stated in the complaint to be an agreement to procure or to be instrumental in procuring; but in finding 7 it is found that he was to procure, and to perform services in connection with procuring, retainers. In the twenty-eighth finding it was sufficient to find that the enumeration is of retainers in which the plaintiff is entitled to share under the agreement, and procured by him, or which he was instrumental in procuring. That fulfilled the cause

of action set forth in the complaint. But why was it alternatively stated that he had "something to do in procuring," and in connection with which he rendered services as agreed? The alternative finding presumably means something in itself, and it conforms to the additional words in finding 7 that the agreement was in addition to what had been found that plaintiff "should continue performing services in connection with the procuring of retainers." Hence difficulty arises in concluding that the learned referee intended to find that in the cases enumerated in finding 28 the plaintiff had procured or had been instrumental in obtaining each and every of the retainers.

The plaintiff finds an aid to the findings in the first finding under the conclusions of law; that is, that the parties entered into a contract whereby the plaintiff was to continue to obtain retainers and to procure business for the defendant, whereby the latter was to pay him one-sixth of the fees thereafter collected by him "from retainers and business that thereafter should be procured by the plaintiff or through his instrumentality." If this be regarded as a finding of fact, it still leaves it doubtful whether the plaintiff procured the retainers enumerated in the twenty-eighth finding, or was instrumental in doing so, or whether he merely had something to do in procuring them and in connection with which he rendered services as agreed upon. The opinion of the referee indicates that he based his finding of indebtedness on retainers procured. But the finding is not limited to that. It allows recovery in cases which plaintiff had something to do in procuring, which does not accord with the cause of action pleaded, or the plaintiff's claim on the trial. The plaintiff's counsel at the beginning of the trial said:

"I will state that the claim is that Mr. Butterly should receive from Mr. Deering a commission equal to one-sixth of the various gross amounts that should be received by the defendant in all cases where retainers had been procured, or should be procured, through his instrumentality and agency."

Later the referee asked plaintiff's counsel what contract he claimed to have established, and received the reply:

"I have shown an agreement, by the testimony of Mr. Butterly, to pay one-sixth of all the retainers that had been procured and that should be procured after that date, January 1, 1897."

The plaintiff testified that he was to be paid upon the basis of the business procured by him. In this state of the pleading, proof, and finding, it is impossible to decide whether any fees allowed were on account of cases with which plaintiff merely had something to do, and a reversal of the judgment is necessary.

[3] But it is urged by appellant that the evidence does not sustain the finding of a contract, or commissions earned under one. The evidence, even that given by Deering, shows that the plaintiff grew to be very competent and evolved much facility for the work of procuring retainers. In recognition of it, the defendant, on January 9, 1897, paid him $1,400, in addition to $100 paid in the previous July. At

that time the defendant wrote a receipt, which plaintiff signed without reading it as he testifies, and after reading it as defendant states.

"New York, Jan'ry, 9, 1897.

"Received from James A. Deering fourteen hundred dollars as extra compensation for services rendered to date in all completed and pending cases. For such services as may be hereafter rendered by me in cases not completed and pending, it is understood that Mr. Deering shall be at liberty, in making any extra allowance or compensation above the regular salary receivable by me, to fix such sum, if any, as in his judgment may be just and equitable.

"This receipt is given at Mr. Deering's request, to avoid any question that the payment by him and the receipt by me of the above sum of fourteen hundred dollars shall be considered as implying the existence of any contract or legal obligation for the payment of any sum over and above the salary which I have received.      J. N. Butterly."

It will be observed that the payment is by the receipt characterized as extra compensation to date in all *complete and pending* cases, and that for services rendered *"hereafter"* in cases not *completed* and pending the allowance was to be determinable by Deering, and that it is stated that the receipt is given to negative the implication of "any contract or legal obligation for the payment of any sum over and above the salary which I *have* received." There is no reference here to business procured after January 9, 1897.

The plaintiff's present attitude is that there had been an understanding before July 15, 1896, that plaintiff should obtain retainers and be paid therefor at the rate of one-quarter of the gross fees collected, and that on the eve of defendant's departure for Europe the plaintiff received from Greene, the bookkeeper, defendant's check for $100, and that, incensed at so slight recognition of the obligation to him, he went with Greene to the ship Teutonic on July 15, 1896, and tendered back the check to Deering, and spoke to him with such temper that the latter pacifically agreed to a contract which should, upon his attention called to it upon his return, be formalized. But plaintiff did not demand a written contract until February, 1899, and yet in January, 1897, did, as he testifies, ask for a settlement, with the result just stated of a payment of $1,400 and the giving of the receipt, at which time it was also agreed that plaintiff should receive one-sixth of the gross fees collected in retainers procured by him and a salary of $40 per week. Deering denies the interview on the ship, testifies that the $100 check was not given until the morning of his departure, July 15th, and that the incidents with which plaintiff associates the interview, for instance, the presence of detectives to guard Deering, which happened in 1895, did not happen in 1896. I think that there is some confusion on plaintiff's part about this interview, although something of the kind may have happened, with modifications as to time and place. But, as I gather from the evidence, the $100 then paid was more than Deering had collected; for it appears, even from plaintiff's evidence, that down to January 9, 1897, very little had been collected on retainers whereon plaintiff claimed at that date, and that the $1,400 paid then, if not a gratuity, was a generous anticipation of collections. And yet the evidence fully justifies the finding that there

was a contract, and also that plaintiff should have one-sixth of the gross receipts collected by defendant on some of plaintiff's retainers.

The sustaining evidence is found in the testimony of plaintiff, which loses something of its force by the finding that the defendant did not agree to advance the yearly salary from $1,000 to $2,-000, which agreement plaintiff states was an integral part of the agreement wherein the commissions were stipulated. Now, when to the receipt is added the testimonyof Deering that no such agreement was made, and the referee's finding that there was no advance of salary stipulated, some aid to the testimony of the plaintiff is needed. It is found in the conduct and written declarations of the defendant. In 1898, and again in 1899, the defendant made payments with such method and strict accuracy as to indicate the discharge of a legal obligation, and not merely a moral duty. In each instance a statement of retainers indicated to have been procured by him was prepared by Greene, defendant's bookkeeper, submitted to Deering as basis for settlement, and upon the same, or summaries prepared by plaintiff, payment made at once at the rate of one-sixth the fees collected, and entries made in the journal and checkbook, showing payment on account of services. Some of the entries were made by Greene, either with or without slips whereon defendant had noted what entries should be made. The significance of slips made by Greene is, it may be fairly argued, of lessened importance, as Greene and plaintiff were and are closely allied in friendship, although Greene often made slips in the usual routine of his duty.

But they were made in defendant's books—books to which Deering had access. These payments may be traced with advantage. On July 16, 1897, defendant paid plaintiff $1,000 on account of services, as the stub and journal entries made by Greene show, and a bank statement of checks made by Greene (and as defendant says upon Greene's volition) upon Deering's order shows a similar entry. This payment approximated one-sixth of the fees collected between January 1 and July 1, 1897, as a statement made by the bookkeeper proves, and see memorandum in defendant's hand at end of statement. But this payment was an advance upon the sum that was paid upon a final settlement for the year 1897, made on February 10, 1898, as is shown by the testimony of plaintiff, and also by the fact that on that date $6,802.84 was by defendant paid to plaintiff; but, when it was later recalled that $1,000 had been advanced, it was repaid to defendant. A journal entry shows this. The payment of $6,802.84 was based on a statement made by Greene of fees collected by defendant, whereon plaintiff had by red ink checked retainers on which he claimed, whereof plaintiff prepared a summary statement, and the payment was precisely one-sixth thereof (Exhibit 4). And so accurate was the settlement made that, upon discovery of an error of $18.11, that amount was returned to defendant, with a revised statement, with a caption written by defendant, "Mr. Butterly's Revised and Corrected Statement, Feb. 24, 1898," and at the foot of it defendant also wrote,

"Received Mr. Butterly's check $18.11, February 24, 1898, J. A. D.," and the cashbook shows as to this item an entry made by Greene (but based on Exhibits 6 and 7):

"Balance due on account adjustment of account of J. N. Butterly for extra work performed."

In Exhibit 6 there is a division of the total fees by 6. In 1899 there was a similar settlement, with a statement dated January 14, 1899 (Exhibit 8), a computation of one-sixth in the *handwriting of defendant,* showing the sum of $2,851.83, a superscription in the handwriting of defendant, a check therefor (Plaintiff's Exhibit 8), entry in check stub, "J. N. Butterly, amount due him to this date, being his share of my fees in matters closed to date, $2,851.-83," while the journal entry is, "Pay J. N. Butterly as share of fees received by me from February 10, 1898, to date, $2,851.83," both of which were made by Greene. Deering testifies that these payments were not made upon the basis of a contractual relation, but were voluntary and gratuitous payments, made by him on account of his estimate of the value of plaintiff's service, not only in procuring retainers, but in general work in the conduct of them, and that the statements as marked by plaintiff to indicate his retainers were not considered by him in the settlement. Moreover, some of the statements produced by defendant carried memorandum made by him (Exhibit 6), which shows that the payment was for extra compensation, "subject to terms of receipt by Mr. Butterly of Jany. 9, 1897—so understood by Mr. B. Feby. 24, '98. J. A. D."

But as plaintiff is not proven to have been privy in any way to such memorandum, it is not evidence against him. The minimum value of these settlements is that they show that the defendant had it in his mind to pay one-sixth of fees received. The procedure was too formal and exact on these occasions to permit the inference of coincidence or chance employment of the same processes and the same basis of settlement. That there was a contract of some kind the defendant has stated in writing. At or after the settlement in February, 1899, the plaintiff agitated the embodiment of the agreement in writing, and submitted to defendant a proposed contract, to which the defendant objected, upon the grounds that, as plaintiff states, two retainers should be taken out and the payments thereon left to defendant's judgment. But defendant insists that the objection was that such retainers should be omitted entirely, and that the other retainers should be separated, so as to show those received before and after January 9, 1897, when the first receipt was given, and that they should be treated separately in the agreement. Be that as it may, it was on this difference that the parties dissolved relations.

But, meantime, defendant had prepared a form of agreement and given it to the stenographer for copying, and while in her hands plaintiff saw it, but not at any time at the instance of defendant. This proposed agreement has recitals which the plaintiff put in

evidence, whereupon defendant offered the rest of the paper. The recitals show (1) that prior to January 9, 1897, there was no agreement for additional compensation; (2) that on that date Deering allowed Butterly $1,400 as extra compensation; (3) that on January 9, 1897, Deering agreed to allow Butterly, in addition to his fixed salary, one-sixth part of the fees which he (Mr. Deering) might receive thereafter from such clients as should thereafter retain Deering in certain cases, and Butterly has been paid to date in closed and paid cases; (4) that Deering has allowed Butterly since January 9, 1897, as extra compensation, a portion of his fees in cases pending on January 9, 1897, and since closed, and is willing to allow, as an extra compensation to Butterly hereafter, a portion of his fees as hereinafter stated in certain cases pending on January 9th and still undetermined; (5) that it is desirable that there should be a full statement of all cases in which Butterly is to be allowed any part or portion of Deering's fees, as well as the cases in which he is entitled to a portion thereof under the agreement. Whatever else the recital shows, it does show that on January 9, 1897, defendant did agree to allow plaintiff a part of the fees thereafter received from clients thereafter obtained in certain cases. This, so far as it goes, is precisely what plaintiff alleges.

[4] But what are the certain cases and what was plaintiff to do respecting them? That is a matter of allegation and proof. But the existence of the contract and rate of payment is beyond doubt. However, the defendant urges that the recitals were not admissible, as they were a part of a proposed compromise. The argument is obscure. What a person promises as inducement to compromise is protected, but a review of past events is not promissory. They are recited to show the existing status, and are facts on which the writer predicates his disposition to move forward to other stipulations. I find no objection to the admission of a man's own writing of the history of his relations to another man in a business affair, whereon he bases a proposed agreement.

[5] In this connection the appellant's argument is that there was no consideration. It is true that the plaintiff's position on the trial seems to have been that previous to January 9, 1897, there was an agreement whereby he should have one-quarter of the fees, and that on that date the old contract was superseded by the new, and that a consideration therefor thus existed. But no such consideration was necessary, as the defendant promised him something for his services to be rendered. If he served, as he said he did, the promise was thereby accepted, and its reward earned.

[6] There are several other questions urged by appellant, to which I will briefly refer. One is that the contract for the salary and the commission was indivisible, and that he forfeited his right by leaving the employment before the expiration of the year, for the reason that the defendant would not include in the payments to be made two cases known as "St. Nicholas Park" and "Ft. George Park," and to the fees in which the referee found plaintiff was not entitled, as they were barred by the receipt of January 9, 1897. But the defendant states

that he discharged him, and, even if the plaintiff said that he would leave the employment, defendant consented to it. I think that he did not thereby lose commissions earned.

[7] It is further urged that plaintiff stole his employer's papers and made improper use of them. Plaintiff did gather up papers in his desk, and amongst them were some that were not his personal papers; but the evidence does not necessitate a finding that there was any intentional wrongdoing in this regard on the part of plaintiff, or that any damage came to defendant therefrom.

It is urged that in certain cases noted the plaintiff did not procure, or was not instrumental in procuring, the retainers. In view of the findings and consequent new trial, that matter may not be profitably discussed. The error as to the Cole property was admitted on the submission to this court.

The judgment should be reversed, and a new trial granted; costs to abide the event.

CARR, J., concurs. BURR, WOODWARD, and RICH, JJ., concur, on the ground of the state of the findings, and also vote to reverse upon the ground that the finding as to the contract is against the weight of the evidence.