ARLINGTON HEIGHTS REALTY CO. v. CITIZENS' RY. & LIGHT CO. et al.

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1913. Rehearing Denied Nov. 29, 1913.)

1. APPEAL AND ERROR (§ 761*) — BRIEFS — COUNTER PROPOSITIONS.

The including in appellee's brief of alleged "general counter propositions" intended to show that the decree should be affirmed was contrary to the court rules.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3096; Dec. Dig. § 761.*]

2. TRIAL (§ 9*) — DOCKETING CASES — JURY DOCKET—PRESUMPTION.

The fact that a case was ordered placed on the jury docket and remained there without change for five years, during which time it was called up as a jury case and treated as such by the parties and officers of the court, raised a strong presumption that it had been properly listed as a jury case, and hence that the jury fee had been paid.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 21–26; Dec. Dig. § 9.*]

3. JURY (§ 26*)—RIGHT TO JURY TRIAL—PAYMENT OF JURY FEE.

The case was docketed on the jury docket and remained there for five years, and was treated by the parties and court officers as a jury case; but the record does not show that the jury fee was paid. Pending the docketing of the suit, plaintiff filed a new suit, raising new issues of fact, in another district which was transferred to this district and consolidated with the original case, already docketed. *Held* that, since that was the first opportunity plaintiff had to try such issues to a jury, a jury trial should have been granted as to the whole consolidated case, even though it resulted in a continuance for the term.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 174, 175; Dec. Dig. § 26.*]

4. REFERENCE (§ 6*)—SUBMISSION TO MASTER —QUESTION SUBMITTED.

The trial court properly submitted all of the matters it saw fit to a master, where there was reserved to the parties the right to except

to any of his findings of fact or law, and to have the questions of fact decided by jury.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 6; Dec. Dig. § 6.*]

5. REFERENCE (§ 3*)—REFERENCE TO MASTER—QUESTIONS OF LAW.

Where a case referred to a master involved in part the construction of contracts and no parol evidence was offered to explain them, a proper practice would be for the trial court to declare the legal effect of the contracts and not leave that question to the master.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 4; Dec. Dig. § 3.*]

6. REFERENCE (§ 105*)—REPORT OF MASTER—EFFECT OF EXCEPTIONS.

Upon the filing of exceptions to a master's report, all matters of fact excepted to should be tried de novo to a jury, and the court should construe the contract involved, and determine all questions of law passed upon by the master regardless of his report.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 205; Dec. Dig. § 105.*]

7. RECEIVERS (§ 90*)—POWERS.

No act of a receiver under orders of court or otherwise could relieve a party from obligations arising from a valid contract, made before the receivership.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 164–166; Dec. Dig. § 90.*]

8. JUDGMENT (§ 948*)—RES JUDICATA—WAIVER OF PLEA.

Error in overruling a special exception to defendant's insufficient plea of res judicata was waived by plaintiff agreeing that all judgments previously rendered in the cause should be considered in evidence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1787–1793; Dec. Dig. § 948.*]

9. REFERENCE (§ 100*)—MASTER'S REPORT—REMEDY FOR DEFICIENCY.

Since plaintiff's exceptions to a master's report taken under reserved permission made it ineffectual for any purpose during the trial, a motion to quash the report because of certain deficiencies was unnecessary, unless, perhaps, it was pertinent on the question of costs.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 157–168; Dec. Dig. § 100.*]

10. TRIAL (§ 169*)—DIRECTION OF VERDICT—NECESSITY OF SUBMITTING EVIDENCE.

It was error to give a peremptory instruction for defendant, when no evidence had been submitted to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 381–387, 389; Dec. Dig. § 169.*]

11. TRIAL (§ 394*) — FINDINGS BY COURT — CONCLUSIONS OF FACT AND LAW.

Where the case should have been submitted to the jury, Rev. St. 1911, art. 1989, authorizing the court to file separate findings of fact and law upon a trial by the court, would not apply.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 924–926; Dec. Dig. § 394.*]

12. APPEAL AND ERROR (§ 274*)—PRESENTATION BELOW — OBJECTIONS TO FINDINGS — EXCEPTION TO JUDGMENT.

Under Rev. St. 1911, art. 1991, making it sufficient for the party excepting to conclusions of law or the judgment to note on the record in the judgment entry that he excepts thereto, an exception to the judgment would authorize a review of the court's findings of fact and conclusions of law, without specific exceptions thereto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1591, 1592, 1605, 1606, 1607, 1624, 1631–1645; Dec. Dig. § 274.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**13. REFERENCE (§ 100*) — HEARING — SUFFICIENCY OF EVIDENCE.**

Evidence *held* not to sustain a finding by the court that the master set down all claims of whatever character against defendant for hearing before him on the date named.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 157–168; Dec. Dig. § 100.*]

**14. VENDOR AND PURCHASER (§ 228*) — BONA FIDE PURCHASER.**

One who purchased land from a traction company with actual and constructive notice of contracts between it and plaintiff, from whom it purchased the land, which provided that it should be forfeited unless the company performed certain acts, and who also knew that a suit was pending by plaintiff alleging nonperformance by such company of the contracts, would not take a better title to the land than the traction company had.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495–501; Dec. Dig. § 228.*]

**15. VENDOR AND PURCHASER (§ 245*) — BONA FIDE PURCHASER—JURY QUESTION.**

Evidence, in an action to enforce contracts for the sale of land to defendant corporation in consideration of the performance of certain acts and to enforce a forfeiture of the land for nonperformance, *held* to make it a jury question whether the alleged purchaser of the land from the corporation was a bona fide purchaser without knowledge of plaintiff's contract rights.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 612; Dec. Dig. § 245.*]

**16. RECEIVERS (§ 137*) — SALE — VALIDITY — ABSENCE OF BID.**

At a receiver's sale of property which the undisputed evidence showed to be worth $105,-000, there was only one bid of $10,000, and the court postponed confirmation of the sale on the ground that the price might be inadequate, but without any advertisement or further notice the court on a subsequent day permitted such bidder to privately raise his bid to $15,000, and thereupon confirmed the sale to him. *Held*, that the sale was void.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 239–242; Dec. Dig. § 137.*]

**17. COVENANTS (§ 71*) — COVENANT RUNNING WITH LAND.**

A covenant by a purchaser in a contract for the sale of land to maintain and operate a street railroad around a certain part of the land for the life of the purchaser's corporate franchise was a covenant running with the land.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 72; Dec. Dig. § 71.*]

**18. MORTGAGES (§ 154*) — NOTICE — RECITALS IN DEED.**

A recital in a deed conveying lands to a traction company that it was subject to the terms of a contract between the parties binding the grantee to maintain certain traction lines was notice of such covenant to a subsequent mortgagee of the land.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 154.*]

**19. CONTRACTS (§ 314*) — BREACH.**

A covenant, in a contract between plaintiff and a traction company, binding the latter in consideration of certain grants to construct a street railroad around the property, was breached by the traction company by selling a part of its railroad and dismantling the remainder so, as to incapacitate it from performing.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1446; Dec. Dig. § 314.*]

**20. CONTRACTS (§ 176*) — CONSTRUCTION—JURY QUESTION.**

The construction of legal instruments which are unambiguous should be based upon their terms, and, if parol evidence is necessary to explain any ambiguities, the question of construction is one of mixed law and fact for the jury under proper instructions.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767–770, 917, 956, 979, 1041, 1097, 1825; Dec. Dig. § 176.*]

**21. JUDGMENT (§ 731*) — RES JUDICATA—QUESTIONS CONCLUDED—QUESTIONS NOT IN ISSUE.**

Plaintiff filed a petition against a street railroad company praying for a receiver to operate the road and carry out the terms of plaintiff's contract for the construction of certain lines by it, and a trust company intervened and sought to foreclose its first mortgage lien upon the former's property. The court directed the master to report on the mortgage claimed by intervener and all others claims "which may be submitted in this cause," and to take proof on all issues "herein presented," and to report all moneys due for liens, and the priority of the mortgages and liens and as to all claims which "may be presented against said defendant company"; but plaintiff's claim for damages for breach of its contract with defendant was not considered by the master. *Held*, that since intervener did not raise the issue of the superiority of its lien over plaintiff's implied lien upon defendant's property, as it should have done, if it desired an adjudication of such issue, the judgment foreclosing intervener's lien could not have adjudicated the priority of such lien over that of plaintiff, and hence would not conclude plaintiff on that question.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1259, 1261; Dec. Dig. § 731.*]

**22. RECEIVERS (§ 149*) — PRESENTATION OF CLAIMS—TIME LIMITATION BY MASTER—VALIDITY.**

In view of Rev. St. 1911, art. 2146, providing that a receiver may be sued in any court having jurisdiction without leave of the appointing court, a claim against a receivership could be presented by claimant to the master after 30 days from an order of the master requiring all claims to be presented to him within 30 days or be forever barred; the master not having power to so arbitrarily conclude the presentation of claims.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 261–266; Dec. Dig. § 149.*]

**23. MORTGAGES (§ 427*) — FORECLOSURE—NECESSARY PARTIES—PRIOR LIENOR.**

One having a prior lien upon property in the hands of a receiver was not a necessary party to an action by a subsequent lienor to foreclose his mortgage lien.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1269, 1272–1287; Dec. Dig. § 427.*]

**24. JUDGMENT (§ 719*) — RES JUDICATA—QUESTIONS CONCLUDED—ISSUES.**

A former judgment will only bar a subsequent action as to material questions which were fairly within the scope of the pleadings in the prior action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1249, 1250; Dec. Dig. § 719.*]

**25. VENDOR AND PURCHASER (§ 254*) — VENDOR'S LIEN.**

Where part of the consideration for the execution of contracts by a traction company to construct a particular street car line was the conveyance to it of certain lakes and real estate, an implied lien in the nature of a vendor's lien arose in favor of the grantor to se-

cure performance of the contract by the traction company.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 627, 634, 641–649, 651; Dec. Dig. § 254.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by the Arlington Heights Realty Company against the Citizens' Railway & Light Company, in which another intervened. From a judgment for defendant and intervener, plaintiff appeals. Reversed and remanded.

Crenshaw & Boykin, O. W. Gillespie, and C. R. Bowlin, all of Ft. Worth, for appellant. Flournoy, Smith & Storer, Capps, Cantey, Hanger & Short, and D. B. Trammell, all of Ft. Worth, for appellees.

HALL, J. The following statement of the nature and result of this suit is taken from the briefs of the parties, with such changes as are found to be necessary:

In 1907 the appellant filed this suit against the Citizens' Railway & Light Company, and on October 28, 1907, the cause was ordered placed upon the jury docket of the district court of Tarrant county. It remained upon such docket without further action until May 2, 1911, when appellant filed its first amended original petition, setting up substantially the breaches of two certain contracts, as set out in its original petition, stating that it had been caused to forego bringing its cause on for trial on account of the fact that the Citizens' Railway & Light Company, through its officers and agents, had continually promised to appellant that it would in a short time be in position to and would improve its service and equipment so as to conform strictly to the terms of the contract; that appellant's officers, relying on these representations and promises, had been lulled into inactivity, but that it had become apparent that said Citizens' Railway & Light Company was making no proper effort to carry out the contract, and appellant alleged upon information and belief that the Citizens' Railway & Light Company (which operated a power plant as well as a street railway system), was diverting the proceeds of its business chiefly toward the up-keep of the power plant to the detriment of the street railway line. Appellant again alleged damages to its property in the sum of $50,000, and prayed that a receiver be appointed to take over and operate the company, particularly the railway lines, in accordance with the conditions of the contract of 1905, and its supplement of 1906. A receiver was appointed upon this prayer, and within a few days thereafter the Citizens' Savings & Trust Company intervened as the trustee in a large amount of first mortgage bonds, given by the Citizens' Railway & Light Company, upon all its property, and asked for judgment upon said bonds with foreclosure of its lien upon all the property of the Citizens' Railway & Light Company, alleging its lien to be a first lien on said property, and asking for foreclosure as against all the parties to the suit. It also prayed that all of the property of the corporation be sold. E. C. Orrick was appointed master in chancery, with certain powers, hereinafter set out. The court also ordered that all persons having claims against the Citizens' Railway & Light Company should within 30 days from the date of said order intervene therein and prove up their claims, and directed the master in chancery to publish a notice to that effect. A notice was published, commanding all creditors of the Citizens' Railway & Light Company to intervene in said suit within 30 days from the date of the court's order, or be forever barred. This order was made at the May term of the Forty-Eighth district court, 1911, and during said term the master began hearings upon claims against the Citizens' Railway & Light Company, including the claims of the Citizens' Savings & Trust Company.

On July 5, 1912, appellant filed its third amended original petition, in substance, as follows:

The Arlington Heights Realty Company sues the Citizens' Railway & Light Company, John W. Davis, receiver of said company, and A. J. Duncan, Jr., alleging that on August 9, 1905, plaintiff owned Lakes Como and Garda, situated about four miles west of Ft. Worth, in Arlington Heights, worth $100,000; that on said date plaintiff owned large tracts of land in various subdivisions of Arlington Heights, which had been plotted into town lots, and also owned the land surrounding said lakes, which was likewise plotted into town lots; that knowing the value that would be added to its property to have street railway connection with Ft. Worth, by extension through its property, it entered into the contract of August 9, 1905, with L. C. Cole, W. P. Engle, and A. V. Baughman, as parties of the second part, and the Fidelity Trust Company, party of the third part, a copy of which is attached to said petition; that by said contract Cole and his associates agreed to have the Arlington Heights Traction Company to build a line of street railway from the city limits of Ft. Worth to the intersection of Lake avenue, with Twelfth street, in Arlington Heights, which line was to be fully equipped and in full operation with the full and satisfactory service of cars thereon by October 26, 1905; that Cole et al. further agreed to make an extension around Lake Como, which was to be completed by July 1, 1906; that they were to make a still further extension of said street railway along Eighteenth avenue and Seventh street, to the main line on Arlington boulevard, which was to be completed by January 1, 1907. They were then to build certain lines in Ft. Worth, to be completed

within twelve months after the franchise should be secured therefor. The contract further provided that, if the Arlington Heights Traction Company should sell said line of railway, it would in conveying the same to any other person obligate the purchaser to operate and maintain said lines for the full life of the franchise so transferred, which was 50 years; that the consideration for such construction and continuous operation was the agreement on the part of plaintiff to procure all right of way, both in the city and out of it, together with the right to operate the same; and, further, plaintiff agreed to convey to the Fidelity Trust Company, to be held by it in trust, and thereafter conveyed to the Street Railway Company, Lake Como and Lake Garda, it being stipulated in said agreement that the conveyances from the plaintiff to the Fidelity Trust Company and from the Fidelity Trust Company to such Street Railway Company should pass title to the said lands, conditional upon the continuous, faithful performance of the obligations in said contract, to pay to such Street Railway Company $15,000, as follows: $5,000 in cash when the rails and ties had been placed upon the right of way from the city limits to the intersection of Twelfth street and Lake avenue; $5,000 when said section of the line should be completed and in operation; and $5,000 six months after completion of said section, the last payment to be evidenced by note.

It was further alleged: That the plaintiff had performed all its part of the contract; had conveyed said real estate and property as provided in said contract. That, by the terms of the deed by which the Fidelity Trust Company. conveyed to the Arlington Heights Traction Company the lakes above described, it is stipulated that said conveyance is made under and by virtue of said contract of August 9, 1905, and is subject to the terms and conditions of that contract. That said deed from the Arlington Heights Realty Company to the Fidelity Trust Company, and the deed from the. latter company to the Arlington Heights Traction Company, are of record in Tarrant county. That plaintiff procured and assigned to the Arlington Heights Traction Company the right of way and franchise to operate as agreed on by it. It also paid the $15,000 as provided in the contract. That the Arlington Heights Traction Company, in partial compliance with said contract, did construct, equip, and operate a line of street railway, both within and outside the city limits of Ft. Worth, upon the parts of the route designated in said contract, but the extension around Lake Como and the extension on Eighteenth avenue and Seventh street, to the main line, have never been constructed. That the Arlington Heights Traction Company never did equip and operate the parts of the line it did operate with the character of cars and equipment, nor according to the schedule, provided in the contract, but equipped and operated the same with inferior and second-class cars, and not more frequently than 30 minutes each way. That afterwards, in 1906, the Arlington Heights Traction Company, still not having made said extensions and still being in default as to the character of its cars and service, sold and conveyed said line of street railway, together with Lake Como and Lake Garda, to the defendant Citizens' Railway & Light Company, and on the 14th day of December, 1906, said Citizens' Company, having up to said time failed to complete said extensions of said lines of railway, as provided for in said contract, and especially having breached and failed to carry out that part of said contract to extend the line of said railway to Lake avenue, as provided for in said contract, to be the termination of said line, but stopped about 800 feet distant from same. Said part of said contract so breached reads as follows: "It is understood, however, that in fixing the time for the completion of the above line of street railway, as aforesaid, that a reasonable allowance shall be made for unavoidable delays, accidents, and strikes, but it is expressly agreed that if said road shall not be completed and equipped and in operation in accordance with this agreement by the first day of March, 1906, that the entire property rights, privileges and franchises of said railway company, including its roadbed, cars, equipment and appurtenances, shall at once and without further conveyance or action of the party of the first part or any of the parties hereto, or of said street railway company, become the property of the party of the first part and all moneys paid into said road shall be forfeited and shall belong to the party of the first part, and all the above-mentioned property hereinbefore provided for, to be transferred to the party of the third part, and shall be at once reconveyed to the party of the first part."

The petition then proceeds: That, by reason of said breach, all of said street railway property, and particularly Lakes Como and Garda, was forfeited to plaintiff and became the property of plaintiff. That the Arlington Heights Traction Company and the Citizens' Railway & Light Company breached said contract by a failure to equip said line of street railway with good and sufficient cars, as provided by the contract, and by failure to operate cars thereon according to the contract schedule; the part of said contract so breached reading as follows: "The entire line of said railway and all parts of same, as hereinafter to be built, are to be first class in their construction and equipment and are to be provided with first-class cars, equipped with all modern improvements and appliances for the safety, comfort and convenience of its passengers, and to be provided with a sufficient number of cars to give the public at all times a service not less frequent than twenty minutes each way on all parts of said line." That

the line was equipped with old, secondhand, antiquated cars, and not enough of them to furnish the contract schedule. That by reason of said breach said donation, and especially Lakes Como and Garda, were forfeited to plaintiff, but the Arlington Heights Traction Company having sold and conveyed to the Citizens' Railway & Light Company all the property acquired by it as aforesaid, including said street railway lines, and said lakes, said Citizens' Railway & Light Company having assumed and agreed to perform all of the duties, obligations, and burdens resting upon said Arlington Heights Traction Company in the premises, and plaintiff still being desirous of having said system of street lines completed and properly equipped and operated according to the terms of said contract, and believing and relying upon said agreement of the defendant Citizens' Railway & Light Company to at once properly equip said lines and operate the same with the class of service required by the terms of said original contract, and without any other consideration moving to plaintiff, plaintiff did on the 14th day of December, 1906, enter into another and additional contract in writing with said Citizens' Company, which was intended by the parties to be, and was, merely supplemental to and in addition to a part of said original contract, dated August 9, 1905; a copy of said contract, dated December 14, 1906, being attached hereto and marked as "Exhibit B." That, by the terms of the supplemental contract, plaintiff consented that the time for the two extensions around Lake Como and on Eighteenth avenue and Seventh street be deferred until such time as in the opinion of plaintiff and the said Citizens' Railway & Light Company development, improvements, conditions, and prospects should justify such extensions of the lines, with a further provision for arbitration in case of difference of opinion between plaintiff and said defendant as to when the conditions would justify the building of said lines. That, by said supplemental contract, the Citizens' Company agreed that within 30 days from December 14, 1906, it would construct and equip an extension of said line as follows: Beginning at the then terminus of the Arlington Heights line at Lake Como, and extending over any feasible route to a point on the street surrounding block 11, in Arlington Heights, where Arlington Heights College was then being built. (This not to be a waiver of the above two extensions.) That by said supplemental agreement the Citizens' Railway & Light Company agreed that it would operate all of said lines of street railway, including the extension last above described, with first-class cars, with a schedule of not less than 20 minutes, during usual street car hours, and that said lines of railway, including said extension, should be maintained and operated during the life of the franchises granted to the Arlington Heights Traction Company;

and it was further agreed that the terms of said supplemental contract should be binding upon the Citizens' Company, and all its successors and assigns. That the consideration recited in said supplemental contract is $10 and other valuable considerations; but plaintiff alleges that in fact the consideration for the premises and agreement of said Citizens' Company was the receipt by it of the land and premises conveyed by this plaintiff to the Arlington Heights Traction Company, including said lakes, Como and Garda, and the said sum of $15,000, donated to said traction company, and the consent of plaintiff to a postponement of the time in which said extension around Lake Como and the Seventh avenue extension should be constructed and put in operation. That the Citizens' Railway & Light Company made the extension to the college, but instead of equipping it as provided in the contract, and operating it on the contract schedule, it equipped and operated the line with a small and worn-out dummy car, and ran the same at irregular intervals, operating it only on the extension, and not over the main line. At the time of the contract for the college extension, plaintiff owned about 450 lots along such extension, which were greatly increased in value by the construction thereof, and especially would have been increased in value by the continuous operation thereof. That the continuous operation of the lines within the city limits of Ft. Worth was of great value to it, for the reason that said lines within the city traversed important streets and furnished access to the Texas & Pacific passenger station and the Santa Fé depot, and afforded means of connection between said city and points in Arlington Heights.

Plaintiff alleges: That all the property of the Citizens' Company was sold or attempted to be sold by the receiver, John W. Davis, on the ——— day of July, 1911. That the railway lines were attempted to be sold to the North Texas Traction Company, and Lakes Como and Garda were attempted to be sold to A. J. Duncan, Jr. That after said purported sale and after the order of the court, purporting to confirm the same, said extension to the female college and the portions of said line within the city of Ft. Worth were abandoned and removed, and there is now no character of street car service over the routes occupied by the parts of said lines so removed in the city of Ft. Worth, and in said Arlington Heights. That, by reason of the breach of the contract on account of the abandonment and removal of said parts of the lines of street railway, Lakes Como and Garda and the $15,000 donated by plaintiff have been forfeited to plaintiff, and that it has been damaged by the defendant Citizens' Railway & Light Company, by reason of the discontinuance and removal of said extension line of railway from the terminus of

said line to a point near block 11, and by the discontinuance and removal of parts of said line within the city of Ft. Worth, by depreciation in value of its said lots adjacent to said extension in Arlington Heights, in the sum of from $150 to $250 per lot, according to the contiguity of same to said extension line of railway; said lots being rendered by reason of the premises worth that much less than the market value of same would have been had such extension not been removed but continuously operated according to the provisions of the said last-named contract. That prior to the contract of December 14, 1906, plaintiff and others arranged for the establishment of the Arlington Heights Female College upon block 11, and that one of the purposes in procuring said extension to the female college, and the establishment of said college, was to increase the value and salability of the lots which it owned adjacent to said college and along the route of such extension, and plaintiff, in order to induce the college to be established at said place, entered into an agreement with the promoters of the college, guaranteeing the continuous operation of such extension, and by reason of the abandonment of said lines the plaintiff will, in all probability, be harassed by litigation and may suffer damages therefrom. That the inducement to plaintiff to make such large and valuable donations, consisting of Lakes Como and Garda and the $15,000 in cash, was to have a system of street railway continuously operated, together with said extensions around Lake Como and Eighteenth avenue and Seventh street, along which extensions and accessible thereto plaintiff owned 500 lots, to which the building and operation of said extension would have added greatly in value.

Plaintiff alleges: That such extensions of said railway, under the provisions of said contract, marked "Exhibit B," should have been made long ago, as the conditions and improvements of said lands justified making of same, but said extensions have never been made, and said defendant, Citizens' Railway & Light Company, is now wholly insolvent and is unable to operate said railway system or to make said extensions. The Citizens' Company is wholly insolvent, and all its properties have been sold or attempted to be sold by the receiver, and the title thereto divested out of said defendant, except the property herein sued for, and that defendant has ceased to do business and is no longer a going concern, and will never construct or cause to be constructed said extensions. That plaintiff is informed and believes that the Northern Texas Traction Company, the purchaser of said street railway system at receiver's sale, did not, unless as a matter of law, assume the burden and obligations of the Citizens' Company to make said extensions, and did not assume the burden (unless it should be held that the covenants before set up run with the land) and obligations to operate such extensions to the female college. By reason of the premises, plaintiff alleges: That the main consideration moving to it for said donation of land and money has failed, and that said land and money have been forfeited to plaintiff, and plaintiff is entitled to recover the title and possession to said land and to recover the said money. That both contracts attached to plaintiff's petition have been recorded in the deed records of Tarrant county. That when Lakes Como and Garda were, under the orders of the court, sold at public vendue, defendant Duncan bid $10,000 for same, but the court of its own motion refused to confirm said sale, on account of the inadequacy of price bid by said Duncan, who thereafter offered $15,000 for the property. That said property was not again put up for sale to the highest bidder, but the receiver, under the direction of the court, accepted said price or agreed to accept same, and the court confirmed such acceptance; but before any deed was made to Duncan, and before he paid anything for the land, plaintiff brought suit for the title and possession of the same in the district court of Tarrant county, in suit No. 31,992, which was subsequently transferred to this court and consolidated with this case, and that said sale has been held in abeyance, and Duncan has not parted with any consideration for same up until the present time, and no conveyance of said land has been made to Duncan or any other person. That said sale was void for the reason that Duncan did not purchase said property at public sale according to the order of the court, but at private sale, after the court had refused to confirm the attempted sale to him for $10,000. That Duncan was not an innocent purchaser for the reason that he was vice president and general manager of the Citizens' Company during the whole time the line was operated by said defendants, and was fully aware of all the terms of the contract pleaded herein and of all the breaches of same herein alleged, and knew that the sale to him was not legal. That the covenants in said two contracts ran with the land mentioned, as Lakes Como and Garda, and that, if Duncan did acquire the title, he forfeited the same to the plaintiff by reason of the failure of the Arlington Heights Traction Company, the Citizens' Railway & Light Company, and their successors and assigns, to carry out said covenants.

This suit was originally brought in 1907, and plaintiff alleges in its original petition damages against the Citizens' Company for failure to properly construct, equip, and operate said lines of street railway, according to the said contracts. Afterwards, on May 9, 1911, plaintiff amended its petition, again asking damages against the Citizens' Railway & Light Company, and further prayed for appointment of receiver to take charge of and operate said line of railway according to said contract, and continue to operate

the extensions thereof, and to prevent the funds earned by the Citizens' Company from being diverted to other purposes than the construction, equipment, and proper operation of said lines of railway, according to the contract; but plaintiff did not ask to have a sale made of the property by receiver and did not contemplate that the defendant's existence as a street railway company should be destroyed. The court appointed a receiver for the purposes prayed for in the amended petition; but, before the receiver had taken any action in the premises, certain bondholders intervened and alleged the insolvency of the corporation, prayed for the appointment of a receiver to wind up its affairs and sell the property, franchises, etc., for the benefit of its creditors; that the receiver, under orders of the court, purported to sell to the Northern Texas Traction Company the street railway system, and sold to J. R. Nutt the light and power system, and undertook to sell Lakes Como and Garda to A. J. Duncan, Jr.

The following provisions, among others, show that the said covenants on the part of Cole and others, and the Arlington Heights Traction Company, and the Citizens' Railway & Light Company, ran with the land, and that it was the intention of all parties that the duty of the street railway company in the premises was continuous, said contracts being binding upon the assigns and successors of said Arlington Heights Traction Company, quoting from the contract of August 9, 1905, as follows: "It is further agreed that if the said railway corporation or its assigns, shall at any time desire to sell said lines or any part of same, the said first party or its assigns claiming its rights in this behalf, shall have the right and privilege over any and all other persons, of buying the said property at the price and on the terms at which it is offered, and in the event that the said party or its assigns does not elect to buy same when offered, as aforesaid, then such corporation or its assigns will in conveying to any other person or persons the said property, delegate the purchaser of said property under penalty incurred of invalidating the said conveyance, if said condition is not complied with, to continue to operate and maintain said street railway for the full time of the franchise so transferred." That when the attempted confirmation of the sale to Duncan was made to this court, plaintiff, believing the Seventeenth district court had jurisdiction, brought suit against the Citizens' Company, the receiver, and A. J. Duncan, in said Seventeenth district court, claiming title to said lands by reason of said alleged forfeiture, and also claiming damages against the said defendants for failure to properly construct, equip, and operate said railway system, according to said contract. Plaintiff alleges that if it is mistaken in its right to recover the title and possession of the lands herein described,

on account of the said alleged forfeiture and failure of consideration and breach of said covenants, then it alleges in the alternative that it has been damaged by said Citizens' Railway & Light Company, by reason of its failure to construct said line of railway and extension, and by reason of its failure to equip and operate same as provided for in said contract, as hereinbefore more particularly alleged, and by reason of the abandonment and destruction of the extension of same to said block 11, as hereinbefore described, and by reason of the abandonment of the parts of said railway within the city of Ft. Worth, as hereinbefore alleged, such damages being more particularly hereinbefore alleged, which plaintiff here alleges to be the total sum of $100,000.

And plaintiff alleges that, if it should recover said damages or any part thereof, it will be unable to collect said damages or any part thereof from said defendants, by reason of the total insolvency of said defendant Citizens' Company, and therefore, by reason of the premises, plaintiff "alleges that any judgment that may be rendered against defendant for its said damages would, in equity, and should be, decreed to be a lien against said property so described as Lakes Como and Garda, for the payment of such judgment; that the $15,000 donated by it in equity should be secured by lien on said land, in the event it should recover a judgment therefor. Premises considered, plaintiff prays that on hearing it have judgment against all defendants for the title and possession of the lands hereinbefore described, and known as Lake Como and Lake Garda, with the grounds adjacent thereto, and divesting the title to said lands and premises out of the said defendant Citizens' Railway & Light Company, and the said John W. Davis, receiver, and the said A. J. Duncan, Jr., and investing this plaintiff with the fee-simple title to said lands, and for an order of the court to said John W. Davis, receiver, commanding him forthwith to deliver over to this plaintiff the possession of said lands, and for all costs of suit. But, if plaintiff be mistaken as to its right to have the relief prayed for, then in the alternative it prays judgment against the said Citizens' Railway & Light Company and said John W. Davis, receiver, for its damages in the said sum of $100,000 and said sum of $15,000 and all costs of suit; and prays that a lien be declared to exist upon said property known as Lakes Como and Garda and the grounds adjacent thereto, to secure the payment of said judgment, and that said lien be foreclosed, and that the court order the sale of said property. And if said property shall sell for a sum insufficient to satisfy said judgment and costs, plaintiff prays that execution issue against John W. Davis, receiver, for the unpaid balance, to be paid out of any assets that he may now have on hand, or which may in future come into his posses-

sion as receiver of said defendant Citizens' Company. And plaintiff further prays that any right, title, or interest which the court may conclude was acquired by the defendant Duncan in and to said lands be canceled and for naught held, or at least held to be subject to the rights of this plaintiff therein. And plaintiff prays for all other and further relief, both general and special in law and in equity, to which it may show itself entitled."

Such further statement of the issues and history of the proceedings, as may be found necessary, will be given in discussing the several assignments.

[1] The first 76 pages of appellees' brief is devoted to the discussion of what it terms "a number of general counter propositions." The purpose of these propositions, as stated by appellee, is to show that the decree of the lower court should be affirmed. Since this method of briefing is at variance with the rules, and since such general counter propositions have failed in their purpose, we will discuss the questions in their order as set out in appellant's brief.

In appellant's first, second, and third assignments of error, it is insisted that the court erred in not permitting appellant to pay the jury fee on June 24, 1912, and place same upon the jury docket. The facts gleaned from the record and bearing upon this issue show that in 1907, soon after the original suit was filed, the court ordered the case placed on the jury docket upon payment of the jury fee. It was thereafter placed on that particular docket, where it remained without change during the five years following that date. It was periodically called by the court during this time as a jury case and was understood by all parties, as well as the officers of the court, to be, and was treated as, a jury case.

[2] This raises a strong presumption that it had been properly listed. It appears, however, that on June 24, 1912, when the case was called for trial, appellees insisted that the jury fee had not been paid, although the records of the court were silent upon that point.

[3] However, the trial court concluded that no fee had ever been paid, and the cause was set down, over the objection of appellant, for trial upon the nonjury docket, for July 5, 1912, at which time it was referred to the master. If, upon investigation, it had been found that the fee had really not been paid, it is our opinion that even then, when considered in connection with the further facts that the new suit, which appellant had filed in the Seventeenth district court, had been transferred to the Forty-Eighth district court, and consolidated with the original case, that new issues of fact had been raised by this pleading, and, further, that as this was the first opportunity afforded appellant to call for a jury to try such issues, the request should have been granted, even though it had resulted in a continuance for the term. The

Constitution declares "the right of trial by jury shall remain inviolate." This case had reposed, undisturbed, upon the docket for five years. There were two jury weeks remaining in the term after June 24th, during which only one jury case was tried. The master's report was prejudicial to appellant and injected into the controversy matters of fact which appellant desired to submit to a jury, and this record discloses no reason why the case could not have slept a little longer, if necessary, rather than violate appellant's constitutional right to a jury trial. It is no answer to appellant's contention in this regard to say that the case was tried before a jury. In fact, a jury was impaneled, but not a word of evidence was submitted for its consideration, and the court, after reviewing the entire evidence, peremptorily instructed its verdict.

It is said by our Supreme Court, in San Jacinto Oil Co. v. Culberson, 100 Tex. 462, 101 S. W. 197: "The defendant was entitled to a trial by a jury of the contested issues of fact, although it had not demanded a jury before the cause went to the master, and had not reserved its exceptions before him. The question whether or not the proceeding was legal or equitable is wholly immaterial." And again: "To still demand a jury to try the issues of fact is a right secured to them by the constitutional and statutory provisions before cited. The right so to try such issues includes the right to have them determined by the jury upon legal evidence, uninfluenced by the conclusions of the master." Appellee insists that the court was justified in refusing to place the case upon the jury docket, because the two jury weeks remaining during that term had been filled with cases set for trial. These cases, however, it seems, had, with one exception, been continued, and the court should not have, under the circumstances, presumed that a setting of this particular case would result in its continuance for the term. Appellant had not failed to perform every duty required by the statute in order to procure a jury trial, unless perhaps it had been a failure to pay the jury fee in 1907. Because the records fail to show positively the payment of such fee, the court should not have presumed against appellant, under the facts above recited, its nonpayment. The presumption should have been in favor of appellant, if at all. Allen v. Plummer, 71 Tex. 547, 9 S. W. 672; Allyn v. Willis, 65 Tex. 65; Berry v. T. & N. O. Ry., 60 Tex. 654; Kenedy, etc., Co. v. State National Bank, 136 S. W. 558; Wm. D. Cleveland & Sons v. Smith, 102 Tex. 490, 119 S. W. 843; Hays v. Hays, 66 Tex. 609, 1 S. W. 895.

We sustain appellant's first, second, and third assignments.

Complaint is made by appellant, in the fourth, fifth, and sixth assignments, of the action of the court in requiring the parties to submit to the master the various matters passed upon by him, including plaintiff's en-

tire cause of action, its claim for damages, as well as its claim of title to the land. There is a conflict of authorities upon the right of the court to compel a reference to a master, and upon the further question as to what matters should be properly referred to him. These questions are discussed at some length by Williams, Justice, in San Jacinto Oil Co. et al. v. Culberson, supra, in which this language appears: "The statute providing for the appointment of masters in chancery in receivership proceedings is as follows  *  *  * : 'The court shall, in every case of the appointment of a receiver,  *  *  * appoint a master in chancery, who shall perform all of the duties required of him by the court, and shall be under the orders of the court, and have such powers as a master of chancery as in a court of equity.' It will be observed that the appointment is to be made and such powers as are given are to be exercised in all such proceedings without reference to the consent of the parties, whatever the court may lawfully require the master to do he may do without such consent; and it is therefore not contemplated that the parties shall be put to their choice between a trial before a jury and a trial before the master.  *  *  * They have no choice but to submit to the doing of the things which the court, through the master, may lawfully do. Obviously, in such proceeding such a referee may render great assistance to the court in many ways, without infringing upon the constitutional right of trial by jury, and the statute may therefore have a broad operation without conflicting with that right, and it is to be construed as consistent with it and not as a denial of it. When it is so construed, it follows that parties to such proceedings, by merely submitting to the course prescribed by the court under its authority, do not give a consent which it does not require them to give. In other words, that they do not consent to substitute action of the master and of the court upon his report, for that of a jury." In the opinion in this case it is further stated: "The reports of auditors, when issues of fact raised by exceptions thereto are being tried before a jury, are not evidence upon such issues. The same rule must be applied to the reports of masters in chancery appointed under the receivership statute."

[4] In the light of this and other decisions to the same effect by our Supreme Court, the trial judge did not err in submitting as many or all of the matters as he saw fit to the master, because there was reserved to appellant the right to except to any and all of the master's findings, whether of fact or law, and have the questions of fact passed upon by a jury under a proper charge by the court.

[5] It occurs to us, however, that a proper practice in this case with reference to the construction of the contracts in question, where there was no effort made to explain their terms by oral evidence, would have been for the trial court to have declared the legal effect thereof, without leaving that question to the master. However, the same result would be obtained by appellant filing exceptions to the master's interpretation of the contract, which would have required the court to construe it anew.

By its seventh, eighth, and ninth assignments, appellant complains of the action of the court in not permitting it to file its fourth amended original petition. Since the judgment must be reversed and the cause remanded, appellant will have the right to file such new pleading, and it is not necessary for us to enter into a discussion of these assignments.

[6] Appellant filed exceptions to every item and finding of the master's report, and, over the objection of appellant, the court considered the report, including the evidence taken before the master, and this action is the basis for appellant's tenth assignment of error.

In addition to what has heretofore been quoted from San Jacinto Oil Co. v. Culberson, supra, we quote from Whitehead v. Perie, 15 Tex. 7, as follows: "The statute seems to have intended that, touching the matters in which the accuracy of the report is impeached, that evidence shall be given anew, at the trial before the jury. It is not perceived, therefore, that the evidence from which the auditor drew his conclusions, if taken down by him, could be of any avail to the parties at the trial." In Dwyer v. Kalteyer, 68 Tex. 554, 5 S. W. 75, it is said: "Either party may except to the conclusions of the auditor, and thus secure the right of trial by jury upon any issue presented in the case.  *  *  * The purpose of the appointment (of an auditor or master) is to have an account so made up that the undisputed items upon either side may be eliminated from the contest, and the issues thereby narrowed to the points actually in dispute." In Kempner v. Galveston County, 76 Tex. 450, 13 S. W. 460, it is said: "The items of an account in an auditor's report not excepted to by either party are conclusive, but as to such as are excepted to the report is without effect.  *  *  * The court in its general charge left the issues of fact as to the disputed items in the account  *  *  * to be determined by the evidence adduced upon the trial without respect to the auditor's report, as it should have done." In Hill v. Dons, 37 S. W. 638, we find: "Appellant complains of the action of the court in allowing plaintiff to introduce in evidence the auditor's report, over objection, when the same had been excepted to. Appellant had filed exceptions to the auditor's report as a whole, and to specified items therein. The report, being allowed in evidence as a whole, without any limitations as to the weight the jury should give it, was calculated to injure appellant as to the items excepted to: We

understand that an auditor's report is conclusive between the parties as to the items therein not excepted to; but, as to those items excepted to, it is of no force whatever, and such items have to be established as any other fact in the case—by evidence aliunde the report."

In our opinion, when the exceptions had been filed to the auditor's report, it could no longer be considered, either by the court or the jury, but there should have been a trial de novo before the jury as to all the matters of fact objected to, and the court should have construed the contract ·and determined all other questions of law, which had been passed upon by the master, uninfluenced by the master's report. Richie v. Levy, 69 Tex. 133, 6 S. W. 685; Lone Star Salt Co. v. Blount, 49 Tex. Civ. App. 138, 107 S. W. 1163.

Defendants' answer contained this allegation: "The portions of said railway which were abandoned and torn up were not so abandoned and torn up by the Citizens' Railway & Light Company, but the same was done by this receiver under the orders of this court." Plaintiff demurs to this allegation, and the demurrer was overruled, and this action of the court is complained of in the eleventh assignment of error.

[7] We think the demurrer should have been sustained, because no act of the receiver, whether done under the orders of the court or otherwise, could relieve the defendant Citizens' Company from the obligations arising from a contract entered into prior to said receivership. Howe v. Harding, 76 Tex. 17, 13 S. W. 41, 18 Am. St. Rep. 17; Brown v. Warner, 78 Tex. 543, 14 S. W. 1032, 11 L. R. A. 394, 22 Am. St. Rep. 67; Hunt v. Reilly, 50 Tex. 99; Levy v. Tatum, 43 S. W. 941.

[8] By its twelfth assignment of error, appellant insists that the court erred in not sustaining plaintiff's special exception to the defendants' plea of res judicata. This plea is clearly insufficient, but we think the error was waived when appellant agreed that all judgments previously rendered in said cause should be considered in evidence. This assignment is overruled.

[9] Appellant made a motion to quash and suppress the report of the master in chancery, because it was too general, vague, indefinite, and meaningless. Appellant's exceptions to the master's report had the effect of rendering it of no effect during the trial, and the motion to quash because of insufficiencies therein was unnecessary, unless, perhaps, it should become pertinent upon a question of costs. This assignment is overruled.

By its fourteenth assignment of error, appellant insists that the court erred in peremptorily instructing the jury to return a verdict for the defendants, for. the reason that ,there were conflicting issues of fact raised by the pleadings, which should have been submitted to the jury. For the reasons heretofore set out, this assignment is sustained.

[10] Appellant's fifteenth assignment of error is that the court erred in giving a peremptory instruction for defendants when no· evidence had been submitted to the jury upon the trial, because a jury could not legally return a verdict, even under a peremptory instruction, when no evidence had been introduced before them. The sixteenth assignment is upon the same point. The seventeenth assignment further challenges the action of the court in refusing to allow the plaintiff to introduce testimony before the jury to contradict the report, since such action on the part of the court deprived the plaintiff of a jury trial upon the issues raised by the exception to the master's report. For reasons hereinbefore stated, these assignments must be sustained.

[11] The eighteenth assignment is as follows: "The court erred in overruling plaintiff's motion to strike out its findings of fact and conclusions of law filed herein for the reason that, said cause being on the jury docket for trial, such action of the court was an invasion of the province of the jury." The record showing this case to be one which should have been submitted to the jury, the statute authorizing the court to file findings of fact and conclusions of law did not apply. It is clear that the issues made by the pleadings and the evidence proffered by appellant in support of its contentions required the court to submit the issues to the jury. R. S. 1911, art. 1989; Jones v. Edwards, 152 S. W. 727.

[12] What is here said also disposes of appellant's nineteenth assignment of error. If this had been a case in which findings and conclusions would have been proper, an exception to the judgment of the court would have been sufficient to authorize the appellant to attack the court's findings and conclusions, without filing specific exceptions thereto at any time. R. S. 1911, art. 1991; Temple et al. v. Watkins Land Co., 81 S. W. 1188; Voight v. Mackle, 71 Tex. 78, 8 S. W. 623; Smith v. Abadie, 67 S. W. 1077; Brenton & McKay v. Peck et al., 39 Tex. Civ. App. 224, 87 S. W. 898.

The question is further raised by appellant in these assignments of the right to amend its petition after appointment of the master and the filing of the report by him. This precise question seems never to have been directly passed upon by the courts of this state. In the cases of Moore v. Waco Building Co., 9 Tex. Civ. App. 404, 28 S. W. 1033, and Barkley v. Tarrant Co., 53 Tex. 252, it appears that the pleadings were amended after a reference and without question, and in the following cases, which seem to be the majority of authorities on that. point, it is specifically held that an amendment, after reference, is proper: Wilson v. Standard A. Co., 81 App. Div. 102, 81 N. Y.

Supp. 8; Graves Elevator Co. v. John H. Parker Co., 92 App. Div. 456, 87 N. Y. Supp. 156; Ellis v. Ridgway, 83 Mass. (1 Allen) 501; Mitchell v. Wilson, 70 Iowa, 332, 30 N. W. 588; Harris v. Belden, 48 Vt. 478; Butterly v. Deering, 152 App. Div. 777, 137 N. Y. Supp. 836.

After considering all the facts connected with this litigation, it is our opinion that the rules relating to the amendment of pleadings should have been liberally construed in favor of the appellant.

[13] In addition to the assignments which have been considered the appellant has briefed 35 assignments, most of which are termed "assignments of error to the court's finding." After what has been said in passing upon previous assignments, it will not be necessary to consider these in detail. The second of these assignments is that the court erred in finding that the master set down all claims of whatsoever character against the Citizens' Company for hearing before him on July 7, 1911. This finding is erroneous, since the master himself, and also J. S. Handford, the president of appellant company, testified that there had never been any adjudication of the appellant's claim for damages and that such claim has never been before the master. The master further testified that appellant's claim that the title to the property in controversy had been forfeited had never been presented to him, and this further clearly appears from the record, independent of the evidence of the master and Handford.

We further agree with appellant in this third assignment that the court erred in finding that practically all of the property belonging to the Citizens' Company had been converted into cash. It is evident from the record that Lakes Como and Garda had not been converted into cash, but were still in the hands of the receiver, and the purchase price unpaid. It is further shown that there is some other property, including an iron bridge worth $1,500, yet undisposed of.

We think the fifth assignment is also well taken. Plaintiff attacked the sale of Lakes Como and Garda to Duncan and asked that the same be set aside in its suit filed in the Seventeenth district court, in August, 1911, and after consolidation of the cases this matter was an issue upon the hearing before the master, and subsequently upon the trial of the cause before the court and jury, and the court erred in finding that appellant had never made any objection to such sale. Appellant admits that it filed no protest to the confirmation of Duncan's bid, but in its third amended original petition appellant pleaded that the sale to Duncan was void, and we think the court should have sustained this plea.

[14] The record indicates that defendant Duncan agreed to purchase the lands with both actual and constructive notice of the contracts, and all the proceedings pending in the court with relation to the suit upon the contracts, and, if so, he could take no better title to the lakes than the Citizens' Company had. The deed conveying to the Arlington Heights Traction Company the lands in question contains this clause: "To have and to hold the above described premises and property, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Arlington Heights Traction Company, its successors, and assigns forever. This conveyance, however, is made under and by virtue of a certain contract by and between the Arlington Heights Realty Company, party of the first part, W. P. Engle, L. C. Cole and A. V. Baughman, parties, of the second part, and the Fidelity Trust Company, party of the third part, bearing date August 9th, 1905, and is subject to the terms and conditions of that contract, without any covenants or warranty whatever." The contract of December 14, 1906, clearly bound the Citizens' Railway & Light Company to maintain and operate the street railway in question during the life of the franchise, which was 50 years. Duncan for several years prior to and up to the time of the receivership had been an officer of the Citizens' Railway & Light Company and was thoroughly acquainted with its business and operation and was also its general manager, under the receivership. Milby v. Regan, 16 Tex. Civ. App. 352, 41 S. W. 372; McLean v. Stith, 50 Tex. Civ. App. 323, 112 S. W. 355; Ill. Central Ry. v. Davidson, 115 S. W. 770; Orme v. Roberts, 33 Tex. 772.

[15] To say the least of it, his connection with the company and the facts which we have recited were sufficient to require the court to submit the question of innocent purchaser on his part to the jury—if indeed he was a purchaser. The court had ordered the receiver to sell the property after advertisement in a newspaper on Saturday, July 1, 1911, at 10 o'clock a. m., at the south door of the courthouse in Ft. Worth, Tarrant county, at public outcry, to the highest bidder for cash. At the sale Duncan was the only bidder for Lakes Como and Garda, the amount of his bid being $10,000. The court refused to confirm this sale in the following language: "And it further appearing that the bid of A. J. Duncan for the 90 acres of land, including Lake Como, was possibly lower than a fair price for said property, and the parties not now being ready to present evidence thereon, it is therefore ordered that the consideration of said bid be postponed, to be further heard, and considered by the court upon the request of the receiver of the said Northern Texas Traction Company or of said Duncan or any party to this suit upon notice to that effect." The record fails to show that any one was ever notified of any further hearing, or that such hearing was ever had. It further appears that without any advertisement, or without giving any one else an opportunity to make a competitive bid, the court allowed Duncan privately to thereafter

raise his bid to $15,000, and then confirmed the sale. The testimony of Handford is that the property was worth $105,000, and this estimate is undisputed by any one, notwithstanding appellees placed Caswell and McAnulty as experts on real estate values on the stand during the hearing. Appellant pleaded the gross inadequacy of the price as well as the irregularities in the sale.

The latest expression from the Supreme Court of this state upon the sufficiency of receivership sales is found in Dilley v. Jasper Lumber Co., 122 S. W. 255, in which, Gaines, Justice, says: "If the facts alleged in the motion are true, the sales ought to be set aside. The aggregate of the money received for the property was about one-tenth of the original price, and about one-fifth of the second lowest price at which the receiver was authorized to make the sale." The rule for making judicial sales, including sales by sheriffs, receivers, and other officers of the court, is that the sale must as to the manner and terms, "conform to the order of the court authorizing or directing such sale." 23 Am. & E. Enc. 1081. In Ackerman v. Ackerman, 50 Neb. 54, 69 N. W. 388, the receiver had advertised and sold the property after the date fixed by the decree for the sale, and it was held that such sale was void and was not validated by a confirmation by the court. "A receiver's sale of property must be made within the time fixed by the order of the court." Morrison v. Lincoln, 1 Neb. (Unof.) 449, 96 N. W. 230. In 24 Cyc. 33, citing Ohio L. Ins. Co. v. Goodin, 10 Ohio St. 557, this rule is announced: "The court has no power to modify the terms of sale and confirm the sale as modified." In South Baltimore B. & T. Co. v. Kirby, 89 Md. 52, 42 Atl. 913, the court had ordered the receiver to sell the property at public outcry. The property was sold at private sale, which was confirmed by the court. On appeal the trial court was reversed, because the property had been sold privately instead of at public outcry. The sale was set aside and the receiver ordered to make the sale at public auction, in accordance with the original order of sale. It is said in Latrobe v. Herbert, 3 Md. Ch. 377, "no deviation from the terms of a decree is more obnoxious to an objection than selling at private sale when the decree directs at public sale." "When the time and place of a public sale are prescribed by law, the sheriff has no authority to sell at any other time or place, and, should he do so, his acts are not merely irregular but void and confer no title." Grace v. Garnett, 38 Tex. 156; Hester v. Duprey, 46 Tex. 625; Moody v. Moeller, 72 Tex. 635, 10 S. W. 727, 13 Am. St. Rep. 839; Howard v. North, 5 Tex. 290, 51 Am. Dec. 769.

[16] The application of the authorities quoted to the facts shows that it would be setting a dangerous precedent to permit this sale to be confirmed. The original order, as stated, commanded the receiver to sell on the 1st day of July. The order confirming this particular sale was made on the 22d day of July thereafter, upon a supplemental report by the receiver to the effect that he had in the interim received an increase of the bid of A. J. Duncan.

[17, 18] The stipulation in the contract of August 9, 1905, binding Cole et al. and their assigns to maintain and operate the street railway for the full time of the franchise (50 years) was a covenant running with the land, and the deed conveying to the Arlington Heights Traction Company the lands in question, and reciting that the conveyance was subject to the terms and conditions of that contract, was notice of the covenant to all parties. The stipulation, binding the street railway company to furnish cars of a certain class and run them according to a certain schedule, had been violated by appellees, but the breach of this provision had been waived.

[19] The first-mentioned covenant was not breached until the receiver sold a portion of the line of railway to the North Texas Traction Company and took up the remainder of the track and sold the rails and other materials, thus placing it beyond any possibility of performing the obligations imposed by the covenant. It follows that appellant's right of action upon such breach did not accrue until then, and this was long after the hearing before the master and after the attempted confirmation of the void sale of the lakes to Duncan. The extent of appellant's rights upon the breach of such covenant is the most difficult question presented by this appeal. It was at this stage of the proceedings that appellant filed its Seventeenth district court suit, setting up contracts by and between it and Cole et al. and the contract with the Citizens' Company, alleging the breaches of the contracts and the failure to equip and operate according to the terms of the contracts, charging an entire breach of the contracts by reason of the abandonment and removal of the lines by the receiver, and that the Citizens' Railway Company had, by its own acts, made impossible a performance of the contract to build the extension around Lake Como and had made it impossible to perform any and all of the conditions of said contracts, and set up a failure of consideration and breach of conditions subsequent, and asked for a return of the properties conveyed, praying in the alternative for damages and that a lien on said properties be decreed to secure the payment of such damages.

It is contended by appellees, upon this phase of the case, that appellants are neither entitled to recover Lakes Como and Garda nor are they entitled to a lien thereon, for the reason that the contract of August 9, 1905, upon which plaintiff bases its right of action, contains no provision of forfeiture or reversion to plaintiff, after the conveyance of the property by the Fidelity Trust Com-

pany to the Arlington Heights Traction Company, but, on the contrary, provides that said conveyance should absolutely vest the title in the Arlington Heights Traction Company. This contention is based upon the following paragraph of the contract: "It is agreed that upon the completion, equipment and operation of said line of railway, as aforesaid, the party of the third part (meaning the Fidelity Trust Company) should, by proper deed, convey the title to the said water plant, together with the ground which the tank thereof is situated upon and all the rights, privileges and appurtenances belonging to said water plant, to the hereinbefore mentioned water company, and shall also convey the said light and power plant, together with all its machinery, appurtenances, wires, poles and other property, and the said Lake Como and Lake Garda, and the improvements and appurtenances thereto belonging, all of which is hereinbefore described, unto the said street railway company; both of which conveyances shall be absolute, subject only to the provisions of this contract as to the operation of said plants by the said parties of the third part." As hereinbefore stated, the deed from the Fidelity Trust Company to the Arlington Heights Traction Company contained this provision: "To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said Arlington Heights Traction Company, its successors and assigns forever. This conveyance, however, is made under and by virtue of a certain contract by and between the Arlington Heights Realty Company, party of the first part, W. P. Engle, L. C. Cole and A. V. Baughman, parties of the second part, and Fidelity Trust Company party of the third part, bearing date of August 9, 1905, and is subject to the terms and conditions of that contract without any covenant or warranty whatever."

It is contended by appellant, on the other hand, that the mere fact that the term "absolute" is used does not necessarily control in the construction of the contract, and quotes from the following authorities: Devlin on Deeds (2d Ed.) par. 7: "The strongest words of conveyance in the present tense will not pass an estate if from the other parts of the instrument a contrary intent be apparent." "That parol evidence is admissible to show, notwithstanding the acknowledgment of the receipt of the purchase money in a deed, that the money was not in fact paid, is well settled. * * * It is clear from the evidence that no money was paid, and that the deed was made upon an executory contract on the part of the defendant, to be performed in the future." Gibson v. Fifer, 21 Tex. 263. "The vendor's lien exists in every case of the sale of land when the purchase price is not paid unless it be otherwise agreed between the parties. And the burden is upon the vendee to show that he

160 S.W.—71

has waived it. * * * And this is so, although the vendor gives an absolute conveyance, reciting the receipt of the purchase money; yet, if the purchase money be not in fact paid, the vendor's lien subsists between the vendor and the vendee and all purchasers with notice that any of the purchase money is unpaid." Cecil v. Henry, 93 S. W. 218. Citing, also, Springman v. Hawkins, 52 Tex. Civ. App. 249, 113 S. W. 967.

As heretofore stated, appellant was denied permission to file a fourth amended original petition. In this pleading the ambiguity existing by reason of the language of the contract and of the deed hereinbefore set out was alleged, and appellant insisted that the construction of the two instruments was subject to be explained by parol testimony, and was an issue of fact for the jury. Since the case must be reversed, and since we have held that appellant is entitled to so amend its pleadings, it is not necessary for us to construe the contract and deed upon this issue, for manifestly, if plaintiff's allegations are established, our construction of the writings alone would be useless.

[20] As was said in Alstin v. Cundiff, 52 Tex. 461: "The conveyance from Cundiff and wife to Hayden was in the ordinary form of a deed absolute, with not only the usual covenants of general warranty, but also one that they had the legal right to convey, and that the land was free from all incumbrance. * * * Although it is both the right and duty of the court to construe the legal instruments where they are plain and unambiguous, yet this construction, as a general rule, should be based upon the terms of the instrument itself. If parol evidence must be resorted to in order to explain these terms or the intention of the parties, then the question of construction ceases to be one of law simply, and becomes one of mixed law and fact, to be determined by the jury under the appropriate instructions from the court." We agree with appellant that the contract of December 14, 1906, according to the writing, is merely supplementary to and is a part of the original contract, dated August 9, 1905; but this is a matter also which might be made an issue by the introduction of parol evidence for determination by the jury.

[21] Appellee further contends that the appellant's right to recover Lakes Como and Garda, as well as its right to an implied lien thereon, in the hands of the receiver, were barred and concluded by the judgment of the Forty-Eighth district court, rendered at the May term, 1911, upon the intervention of the Citizens' Saving & Trust Company, seeking to foreclose its mortgage bonds against the Citizens' Railway & Light Company. As a statement from the record bearing upon this issue, it appears that on May 11, 1911, the appellant filed its first amended original petition, praying for the appointment of a receiver of all the property, alleging, among other things, that defendant owed a great

many other debts that are due and unpaid, besides the debt claimed by plaintiff for the breach of its contract with plaintiff, and that the defendant was in default in the payment of the principal and interest on its bonds and was then either insolvent or at least in imminent danger of insolvency. The plea of intervention, filed by the Citizens' Saving & Trust Company, alleges that its cause of action is "against the defendant (meaning Citizens' Railway & Light Company) as well as against the plaintiff herein (meaning Arlington Heights Realty Company). The appellant's first amended petition did not pray for a sale of the property, but asked for a receiver to be appointed to operate the railroad and carry out the terms of the contract, while the plea of intervention prayed, among other things, as follows: "That upon hearing hereof your intervener, as trustee, recover a judgment against defendant (for the amount of its bonds, with interest) * * * for a foreclosure of its first mortgage lien upon all the property described in said mortgage belonging to the defendant company and all additions and exceptions made thereto as of August 1, 1906, and as such mortgage lien exists on that date against all parties hereto, and that intervener's lien, by virtue of said mortgage, be declared to be a first lien upon all of said properties, or a first lien upon the proceeds of the sale thereof, in the event same shall have been sold prior to the time of final judgment," etc. The order of the court appointing the master in chancery defines his duties, among others, as follows: "For the taking of proofs touching the matters in issue presented by a plea of intervention of the Citizens' Saving & Trust Company, and to ascertain and report the amount of the debt, principal, and interest, and reasonable expenses, costs, and counsel fees, due to said intervener, and the mortgage claimed by it and the property subject thereto, as well as any and all other claims which may be submitted in this cause against the Citizens' Railway & Light Company. It is therefore now here ordered by the court that said cause be and the same is hereby referred to E. C. Orrick, master in chancery, and he is made a master in this cause, and is hereby directed to take proofs of all and singular the issues herein presented by any and all the parties hereto and to ascertain and report as soon as may be, the outstanding bonds, the principal and interest unpaid thereon, and all moneys due for taxes or other liens on the mortgaged premises, and the priority of said mortgages and liens and the nature, character, and amount of any and all claims which may be presented against said defendant company."

It further appears that in obedience to this order, the master filed a report, recommending the sale of all the property on the 1st day of July, 1911. In that report appears the following statement: "And thereupon came all the parties, the plaintiff, the defendant, and the intervener, and announced ready for hearing, upon the said application for order of sale of the property." And further: "The master, having heard all of the testimony which was offered, finds: That it is a fact, which is conceded by all parties to the record, that the defendant company has heretofore issued, and there are now outstanding against it, 639 first mortgage five per cent. bonds, etc." This report was confirmed by the court on June 9th and by a judgment, which was not excepted to by the appellant, has not been set aside, modified, or appealed from. Final judgment was rendered reciting, "all parties at interest being present in person or by attorney," adjudging the amount due on the bonds, foreclosing the mortgage upon the property, describing it, and ordering the receiver to pay the judgment out of the moneys coming into his hands as a claim of class C; that is a claim next after the payment of the expenses and costs of receivership, and all those claims which are given in the report of the master priority and designated as class B.

We do not construe the order for the reference as broadly as appellee. It will be noted that the master is to report on the mortgage claimed by the intervener and all other claims "which may be submitted in this cause." He is directed to take proof on all issues "herein presented by any or all of the parties hereto," and is to report on the outstanding bonds "and all moneys due for taxes or other liens on the mortgaged premises and the priority of said mortgages and liens and the nature, character, and amount of any and all claims which may be presented against said defendant company." Appellant's claim for damages was not considered by the master, according to his own testimony, for the reason, we presume, that it was not "submitted" nor "presented" for his consideration. The pleading of the intervener made no mention of any claim of appellant, either for a lien or otherwise, and appellant had no pleading on file at that time in which it was setting up any claim of lien, and in our opinion there could be no issue joined as to the priority of the intervener's lien, and the rights of appellant. While judgment foreclosing the master's report and the receiver's sale make the general recitation that "all parties appeared before the court," and while appellants were in court asking that the contract, requiring the operation of the street railway, be enforced, it was not there by any mention of appellant's liens.

In Jones on Mortgages (4th Ed.) § 1439, it is said: "When a prior incumbrancer is made a party to a foreclosure suit, there should be allegations of the purpose for which he is made a party, as, for instance, that the amount of mortgage may be ascertained and determined by the judgment of the court so that the mortgage can be paid out of the proceeds of the sale, or so that the sale may

be made subject to the known amount of the lien. If such purpose is not indicated in the complaint, nor provided for in the judgment, the prior incumbrancer will not be affected by the judgment." Also, Id., § 1440. In section 1589, it is said: "Where a party has a right under the mortgage and also a right prior to it, he is not precluded in respect of the prior right by a judgment of foreclosure, though the terms of it are broad enough to cover both rights. The decree is final only within the proper scope of the suit, which is to bar equity of redemption. Therefore where land was devised to one in trust to receive the rents and profits and apply to the benefit of another for life of the remainderman, and the tenant for life made a mortgage in which no allusion was made to the trust, it was held upon a foreclosure of the mortgage that the trust estate was not affected by the mortgage or by the judgment of foreclosure, although the person named as trustee was in his individual capacity a party to the suit. In like manner, if there be an outstanding right of dower in the wife of the mortgagor, the making of her a party to the action of foreclosure and the rendering of a judgment foreclosing the rights of the defendant in the premises do not affect this right." In 27 Cyc. p. 1569, it is said: "Since the object of foreclosure is to extinguish the equity of redemption and obtain a sale of the mortgaged premises, all persons who own that equity or who are interested in it adversely to the mortgagee and by way of claiming title or beneficial rights in it, as distinguished from having a mere lien upon it, should be made defendants, but not persons whose interests in the equity of redemption are such that they could not be cut off or affected by any decree made in the foreclosure proceeding." In Id., p. 1577, it is said: "It is generally held that the senior mortgagee is not a necessary party to a suit to foreclose by a junior mortgagee, but the prior mortgagee is a proper party where relief is sought against him, as where the validity or priority of his lien is disputed or the amount due him, or where the plaintiff seeks to redeem him.

In the case of Goebel v. Iffla, 111 N. Y. 170, 18 N. E. 649, cited by appellees, being a case where some reversionary interest was left under a will, and a mortgage was executed upon the land in question, and the mortgagee sued to foreclose his mortgage, making those interested under the will parties, fully pleading the facts that he claimed made the mortgage lien a prior one, and especially pleading that the defendant's lien was inferior, the court uses this language: "It appears that while prior incumbrancers are neither necessary nor proper parties to an ordinary action of foreclosure and that when made under the general allegation that they claim as subsequent purchasers, incumbrancers, or otherwise, a decree will not affect them, and moreover if the facts that plaintiff relies on to defeat the prior title are stated, the defendant whose title is thus assailed may demur to the complaint upon the ground that the plaintiff has no right to bring him into court upon the foreclosure to try the validity of his title. Yet, if the party made defendant, instead of demurrer, should answer and litigate the question, and judgment should go against him, no case decides that the judgment would not conclude him in a collateral action." The case of Foster v. Johnson, 44 Minn. 290, 46 N. W. 350, also cited by appellees, announces the rule clearly that a prior mortgagee is not a proper party to an action by a junior mortgagee to foreclose, and says: "But prior lienors may consent to become parties to such an action, or may be made such," whereby it is sought "to ascertain the extent of their claims, and to have the premises sold subject thereto, or absolutely to create a fund out of which the several incumbrancers shall be paid in their order; but such purpose or object should clearly appear from the complaint."

We conclude from these authorities that, if the intervener desired to have the question of the superiority of its lien over the appellant's lien litigated, the duty rested primarily upon it by specific pleadings to put such matter clearly in issue. This record shows that appellant had not put its implied lien in issue, neither did it "submit" or "present" to the master its claim; and, its rights being prior in point of time, it was not bound to do so unless challenged by specific allegations of some other party to the suit.

[22] Appellees contend that the order of the master, to the effect that all claims not presented before him within 30 days should be forever barred, is conclusive of appellant's right to thereafter sue for the property, enforce its implied lien, or claim damages. Chief Justice Stayton, in the case of Texas & Pacific Ry. v. Johnson, 76 Tex. 432, 13 S. W. 466 (18 Am. St. Rep. 60), says: "It is contended further that not only was it necessary for appellee to establish his claim through intervention, but that such intervention should have been made within the time prescribed by the order or the claim forever barred. * * * It is generally understood that in our form of government none other than that to which all power to make laws is given have such power. Within what time a claim shall be established or action brought to establish it must be determined by the lawmaking power, except in those cases in which from long lapse of time courts of equity have felt authorized to refuse to enforce them. The court in the order referred to undertook to establish arbitrarily a fixed period, which might arise as short a time as three months after the cause of action arose, within which it would be barred. The court had no rightful power to make such an order." Again, in T. & P. Ry. v. Sims, 26 S. W. 635, the same rule is announc-

ed, and it is there declared that an order of the United States Circuit Court, discharging a receiver of a railroad company and requiring all claims against a receiver to be presented and prosecuted within a fixed time, is void, since no power to pass laws of limitation is lodged in the federal judiciary."

[23] These cases and the authorities cited in the last case, when construed in connection with article 2146, R. S. 1911, providing that a receiver may be sued in any court having jurisdiction of the cause of action, without leave of the court appointing such receiver, we think gave the appellant the right to urge its claim, after 30 days, by separate action in the Seventeenth district court, and since the plea of intervention did not directly, by specific averment, put the question of priority of liens in issue, and since the order of reference did not authorize and empower the master to inquire into the merits of appellant's claim, and since appellant's claim, if it had any, was prior to that of the intervener's, and by reason thereof appellant was not a necessary party to the action, we think the above-mentioned orders are not res judicata. As bearing further upon the effect of these orders, the record shows that appellant sought to attack the conclusiveness thereof by oral testimony and was denied this right by the action of the court. As was said in Cook v. Burnley, 45 Tex. 97: "Had it (the former adjudication) been admitted in the answer, that, of course, would have superseded the necessity of its proof, and would have justified the court in deciding the case upon the pleading, as it did. But that important fact is denied by Cook, and he asked for a trial of it by a jury in his last amended answer, and also in his application for rehearing; from which it is obvious that no consent was given by him for the matters in issue to be determined by the court, without a submission of the facts in dispute to a jury. * * * In disregarding his rights in that respect, the court below committed a material error."

[24] In our judgment, because plaintiff had no pleadings on file claiming any character of lien upon the land, and none of the other parties to the suit had any pleadings putting the question of lien in issue, the rule of res judicata does not apply, and we base our judgment upon this contention on the above-quoted and following cases, and the authorities cited therein: Philipowski v. Spencer, 63 Tex. 604, and Dunlap v. Southerlin, 63 Tex. 38, which hold that, as a general rule, a former judgment will not be a bar to further litigation unless the same vital point was put directly in issue and determined or was fairly within the scope of the pleadings. It is said in Dunlap v. Southerlin: "Courts have no more power, until their action is called into exercise by some kind of pleading, to render a judgment in favor of any person, than they have to render judgment against a person until he has been brought within juris-

diction of the court in some method recognized by law as sufficient." F. & M. National Bank v. Taylor, 91 Tex. 78, 40 S. W. 876, in passing upon a pleading similar to that filed by the intervener herein, says: "The allegation of the bank that its lien is a prior lien is simply a conclusion of the pleader and not the statement of a fact."

From a review of all the authorities to which we are cited, and which we have found, and from the record, we conclude that appellant's prior lien was not adjudicated, nor was it necessary to determine the question of priority of such lien in the proceeding to foreclose intervener's mortgage. Hague v. Jackson, 71 Tex. 761, 12 S. W. 63; Garza v. Howell, 37 Tex. Civ. App. 585, 85 S. W. 462; Pomeroy's Equity (2d Ed.) 1260, 1261; Jones on Mortgages (4th Ed.) 1436.

Appellee insists that the case of Scott v. Farmers' & Merchants' National Bank, 97 Tex. 31, 75 S. W. 7, 104 Am. St. Rep. 835, is conclusive against appellant's right to enforce its implied lien against the property; but we do not so construe that decision. That is a case where one corporation sold its lines of railway to another, and as part consideration for the transfer it was agreed that the buying company should operate said line for a period of five years to and through a tract of land owned, not by the selling company, but by the directors of the selling company, as individuals, and it was insisted in that case that the rule as laid down in Howe v. Harding, 76 Tex. 17, 13 S. W. 41, 18 Am. St. Rep. 17, should control; but Gaines, C. J., said: "The next question in order grows out of the claim of Parker and his associates for damages for the failure of the electric company to run its cars to Alta Vista for the term of five years. The claim is that that stipulation in the contract was placed in it for the benefit of Parker and other directors of the Dummy company, who owned lands in the vicinity, which were to be enhanced in value by the construction and operation of the line. They recovered a judgment for the damages, with a decree enforcing a lien, in the nature of that of a vendor, upon the property. It is maintained that this decree is justified by the decision of this court in the case of Howe v. Harding, 76 Tex. 17 [13 S. W. 41, 18 Am. St. Rep. 17]." Judge Gaines then discusses and quotes from the case of Howe v. Harding, and says: "It thus appears that in that case the promise to maintain the tank, etc., was made directly to the appellee. Now this court has held that, in a transaction for the sale of land, a note given to a third person by the vendee as the consideration of the sale may carry with it a lien upon the land for its payment. Pinchain v. Collard, 13 Tex. 333. If it be so with a promise to pay money, why not with a contract to do some other things as a consideration for the conveyance? But in this case there was no promise to Parker and his associates to give a lien, or in fact to do anything; and

we think none should be implied. The benefits which were expected to accrue to them were remote and collateral to the transaction." The inference may be clearly drawn from Judge Gaines' opinion that, if it had been sought to foreclose the lien in behalf of the selling corporation, the rule in Howe v. Harding would have been enforced.

[25] Our conclusion, drawn from a perusal of the original contract and the supplemental contract, is that part consideration for the execution of the contracts was the transfer of the property therein mentioned to the traction company, and that an implied lien in the nature of a vendor's lien exists to secure the performance of the terms of such contract, in the same manner as a vendor's lien exists against property to secure the payment of the purchase money, and that the rule announced by the Supreme Court, in Howe v. Harding, supra, should control upon another trial.

In conclusion, the case of Scott v. F. & M. National Bank, supra, is strenuously urged by appellee as sufficient authority upon the question of res judicata. But a careful reading of that case will show that the bank's claim as assignee of the Graves judgment is not mentioned in the decree, but the Supreme Court presumed that all of its equities were set up in that suit, while in the instant case the record shows, and appellant was prepared to supplement this proof by oral evidence establishing the fact, that appellant's lien was not in issue by the pleadings, nor in fact presented to the master.

The judgment is reversed, and the cause remanded.